Stephenson *v.* Thompson.

JAMES STEPHENSON, Appellant, *v.* JAMES THOMPSON, Appellee.

APPEAL FROM CASS.

A verbal agreement to purchase land for the benefit of another is void under the Statute of Frauds, and cannot be enforced against a purchaser who, in the absence of fraud, has paid for the land with his own money and taken a conveyance in his own name.

A resulting trust is not founded on a contract. The whole or a part of the consideration-money must be paid to raise such a trust in favor of a party.

Where an agreement existed in parol between A and B that A should pay for certain lands, and on being reimbursed by B therefor A should convey them to B, and the same lands were sold at sheriff's sale and bought by A with his own money, and were conveyed to him by the sheriff: —

*Held,* that the sheriff had no authority to take a mortgage either from the purchaser at the sale or his assignee; and that the contract between A and B was simply a contract for a purchase of the premises, and did not possess any attribute of a mortgage.

Where a sheriff's deed recites the fact that the certificate of purchase was assigned, it will be held to be *primâ facie* evidence of that fact.

An acknowledgment is not any part of a sheriff's deed. Like all other deeds, except those executed by married women, a sheriff's deed, when its execution is proved, is valid without any acknowledgment.

THE decree in this case was entered by MINSHALL, Judge, at the May term, 1851, of the Cass Circuit Court. The complainant in the court below took this appeal and assigned errors.

The facts of the case are set out in the opinion of the court.

M. McCONNEL, for appellant.

R. S. BLACKWELL, for appellee.

TRUMBULL, J. Stephenson filed his bill in chancery to the October term, 1849, of the Circuit Court of Cass county, alleging, in substance, that one Lindsay, in 1841, was the owner of a lot of land in Beardstown, in said county; that Ormsby, Hite, & Co. during the same year purchased said lot at a sheriff's sale on an execution issued upon a judgment in their favor and against Lindsay; that no deed was ever made to Ormsby, Hite, & Co., but they took a certificate of purchase, and were willing that Lindsay should redeem the premises after the term pre-

scribed by law had expired, on the payment of their bid for the same and interest; that Lindsay, in 1846, the property still being in his possession, procured the defendant, Thompson, to purchase the lot for him, and become responsible to Ormsby, Hite, & Co. for the purchase-money; and thereupon Ormsby, Hite, & Co. assigned to Thompson the certificate of purchase of the lot, and the sheriff of Cass county, at the request of Lindsay, made a deed to Thompson; that no money was paid at the time of the transfer of the certificate, but Ormsby, Hite, & Co. sold the property on a credit and took the notes of Thompson, payable at a future day; that it was agreed, between Lindsay and Thompson, that the conveyance to the latter should be for the use of the former, and that the money advanced or to be advanced by Thompson should be a loan to Lindsay on the security of the lot; that Thompson should take possession of the premises and receive the rents until reimbursed his advances, or until Lindsay should otherwise pay him said sum; and that a written contract was made and signed by the parties to the foregoing effect: That Lindsay immediately advanced to Thompson part of the money to pay Ormsby, Hite, & Co., and Thompson immediately took possession of the premises, on which were valuable buildings, yielding a large rent, which was received by Thompson from that time forth; that shortly after making the aforesaid contract, Lindsay departed this life, and the written contract was lost, or had been taken from the papers of Lindsay; that Lindsay, during his life, made various payments to Thompson, including rents, and that after Lindsay's death, Thompson, still having possession, continued to receive the rents until the sums paid by Lindsay and the rents have more than reimbursed him for all his advances; that Stephenson, the complainant, in 1846, and before the decease of Lindsay, recovered a judgment against him, and that on an execution issued upon said judgment the premises in question were sold, and purchased by Stephenson, who received a sheriff's deed for the same in 1848. The prayer of the bill is, that Thompson be decreed to account for the rents and moneys received; and, in case they are not equal to his advances, that the complainant be permitted to redeem the lot, as Lindsay would have had a right

to do under the contract; or if the receipts by Thompson exceed his advances, that he should account for the excess. By an amended bill it is alleged that Thompson never obtained a legal, *bonâ fide* title to the lot, but that it was put into his possession with the intent to defraud the creditors of Lindsay, of whom complainant was one, and with an understanding that Thompson should hold the property publicly as his own, but secretly for Lindsay, and that he still fraudulently retains the possession against the complainant; that whatever rights Thompson acquired to the property he took in trust and for the use of Lindsay, and that it was verbally agreed between them that Thompson should hold the property as trustee for Lindsay; that a written contract, showing said secret trust, was drawn up between the parties, but which, owing to the sudden death of Lindsay and the fraud of Thompson, was never signed; and that said agreement is legally and equitably binding upon Thompson, notwithstanding it is not evidenced by any writing signed by the parties. The amended bill prays to have the title to the lot determined and quieted in the complainant, as against the claims of Thompson, and for general relief.

Thompson, in his answer, admits that Lindsay owned the property in 1841, and that it was sold, and purchased by Ormsby, Hite, & Co., as alleged in the bill; that he subsequently purchased the premises and took an assignment of the certificate of purchase from Ormsby, Hite, & Co., and on the 14th of April, 1846, obtained a deed for the property from the sheriff of Cass county; denies that Lindsay at any time, either before or after or at the time of the execution of the deed, paid any money or other valuable thing for or on account of the premises, or that he advanced any part of the consideration-money to Ormsby, Hite, & Co., or that there was any contract by which Lindsay was to have the property upon the receipt of a certain amount of rents or money, and all other charges of a similar character; admits that Lindsay applied to him in 1845, stating that Ormsby, Hite, & Co. were then in possession of the premises, were willing that he, Lindsay, or any one he could find, should have the property upon paying them the amount due on their claim; and proposed, as he, Lindsay, could do nothing himself, that

Thompson should take the property on the terms proposed, but denies that any conditions were proposed by Lindsay that the property should enure to his benefit in any contingency, or that he holds the same in trust, or in any manner for the use of Lindsay; denies all charges of fraud and collusion made in the bill, but admits that he made frequent declarations of intended benefits and favors to Lindsay, which, without explanation, might give color to the claims set up by complainant; but so far from intending that such expressions should be understood as an agreement, he declined executing a written contract which was once presented to him by Lindsay when intoxicated, and which he did not read, but understood to be some stipulation in reference to the property in question; denies the existence of any written agreement between himself and Lindsay at any time, or any verbal contract in reference to the premises, and sets up the provisions of the Statute of Frauds and Perjuries in reference to any parol contract or declarations which he may have admitted or which may be proved against him.

The evidence shows that Ormsby, Hite, & Co. took possession of the property in controversy in 1843, after the expiration of the time within which a redemption was allowed by law, and retained possession of the same till the sale to Thompson, in 1845; that Thompson purchased the property, at the instance of Lindsay, for the sum of $554.63, of which two hundred dollars were paid down, and for the balance Thompson gave his note, payable in five months, with ten per cent. interest, which he subsequently paid; that, at the time he bought, he took an assignment from Ormsby, Hite, & Co. of their certificate of purchase, and subsequently obtained a deed from the sheriff; that no contract in writing ever existed between Thompson and Lindsay in reference to the land, but there was a parol understanding between them, that Thompson should convey the premises to Lindsay, on being reimbursed his advances by Lindsay; that Lindsay paid no part of the purchase-money for the lot, but that the whole amount was paid to Ormsby, Hite, & Co., by Thompson; and that the complainant obtained judgment against Lindsay, as alleged in his bill, purchased the premises at a sheriff's sale, on an execution issued upon said

judgment for the sum of ten dollars, and subsequently obtained a sheriff's deed therefor.

Upon this state of facts, it is very clear that Lindsay had no such interest in the premises as could be asserted in a court of equity, and the complainant can claim no greater rights than Lindsay possessed, unless the property was held by Thompson fraudulently, as respects the rights of creditors, of which there is not a shadow of evidence in the record.

The property was purchased by Thompson in his own name, and paid for with his own money. He was not guilty of any bad faith in taking the title to himself, but he received it with the knowledge and consent of Lindsay. The most that can be said is, that he agreed by parol to let Lindsay have the property, on being reimbursed his advances; but how does this differ from any other case, where one person agrees by parol to convey real estate to another, on the payment of a stipulated price, which would clearly be a case directly within the statute, which declares that no action shall be brought upon any contract for the sale of lands, unless the same be in writing, and signed by the party to be charged therewith? A verbal agreement to purchase land for the benefit of another is void, under the statute of frauds, and cannot be enforced against a purchaser who, in the absence of fraud, has paid for the land with his own money, and taken a conveyance in his own name. Fox *v.* Heffner, 1 Watts & Sergeant, 372; Robertson *v.* Robertson, 9 Watts, 32; Bartlett *v.* Pickersgill, 1 Eden, 515. The same principle has also been twice decided at the present term of this court. Penny *v.* McHenry, and Tams *v.* Alexander.

These cases also settle the principle, that no trust can arise in favor of Lindsay upon the facts of this case. A resulting trust is not founded on a contract; and clearly Lindsay could have had no pretence of claim to the property, except by virtue of his parol agreement with Thompson. Lindsay never paid any part of the consideration-money to Ormsby, Hite, & Co., which could alone raise a resulting trust in his favor. He must have been in a position to take the contract made by Thompson off of his hands, or else he could not claim to be substituted to his place. He cannot prove by parol a new contract between him-

self and Thompson, different from the one on which the latter got the property, which would be the effect of allowing him to take the property when Thompson had received his advances out of the rents.

The idea that Thompson, after fairly purchasing the lot in his own name, and paying for the same with his own money, should reimburse himself for his advances out of the rents of the property, and then be compelled to convey it to a person who paid no part of the purchase-money, is preposterous.

It has, however, been insisted, that Thompson took the deed to himself as a security for the advances he made for Lindsay, and that the conveyance is to be treated as a mortgage. The money paid Ormsby, Hite, & Co. for the land, did not come from Lindsay, but from Thompson; so, also, the deed was not from Lindsay, but from the sheriff, whose duty it was to make an absolute conveyance of all the debtor's interest in the premises. The sheriff had no authority to take a mortgage, either from the purchaser at the sale or his assignee. The transaction between Lindsay and Thompson was simply a contract for a purchase of the premises by the former from the latter, and did not possess one attribute of a mortgage. Fox *v.* Heffner, 1 Watts & Sergeant, 372; Wright *v.* McNeely, 11 Illinois, 241.

Two objections have been taken to Thompson's title. First, that there is no evidence of an assignment of the certificate of purchase from Ormsby, Hite, & Co. to him; and, secondly, that the sheriff's deed is insufficient to pass the title, for the reason that it is not properly acknowledged, the acknowledgment having been taken by a probate justice of the peace, instead of a clerk of some court of record, as required by § 29, chap. 24, Rev. Stat.

It is a sufficient answer to the first objection, that the statement of Dummer, which was made evidence by consent of parties, shows that the certificate of purchase was assigned; but if this were not so, the deed from the sheriff recites the fact, which, of itself, is *primâ facie* evidence of the assignment. See Wiley *v.* Bean, 1 Gilman, 302.

To the second objection, it may be answered that, admitting the sheriff's deed to be insufficient to vest Thompson with the

legal title to the premises, the facts of the case clearly show that he is equitably entitled to them; and it would be strange, indeed, if, in a court of equity, he could be divested of real estate, of which he was the equitable owner, merely because he was not vested with a title clothed in all the forms of law. An acknowledgment is not, however, any part of a sheriff's deed. Like all other deeds, except those executed by married women, the deed of a sheriff, when its execution is proved, is valid without any acknowledgment. Unless duly acknowledged, it would not be admissible in evidence without proof of its execution, and, as the statute formerly was, it could not have been recorded without an acknowledgment; but, when its execution was proved, as we are bound to presume was done upon the hearing in this case, it was wholly immaterial whether it had ever been acknowledged or not.

Decree affirmed, with costs.          *Decree affirmed.*