JOHN S. GREENE, and WHIPPLE HARRINGTON, Plaintiffs in Error, *v.* ALVIN COOK, Defendant in Error.

ERROR TO DeKALB.

A decree that money shall be paid to the attorney of either of two parties defendant, who have different interests and liabilities, and covenants standing between them, is erroneous.

A purchaser of land for which his vendor had given a bond, and also an agreement to sell to another, upon such conditions as gave the option to declare a forfeiture, the time of payment having past, is not bound to suppose such agreement created a mortgage.

An agreement to purchase land does not create a mortgage.

A induced B to enter land, and agreed to purchase it of B, not advancing any money for that purpose; A and B contracted in reference to the sale and purchase of this land upon conditions precedent to be performed, which were neglected, and B sold the land to another. *Held*, that such a transaction did not create a resulting trust in favor of A.

IT appears from the record in this case, that in February, 1849, Thomas R. Greene, who was a capitalist, was engaged

in entering lands with land warrants, and making sale of such lands to others, on time, at an advance.

That during this time, one H. H. Tinker went about the country, looking up suitable lands to be entered, and purchasers, when that could be done, to purchase them. That about the 8th of February, 1846, Tinker having found that one Kilpatrick desired to purchase three forty acre tracts of land adjoining the land in question, applied to Cook, the defendant in error, to know if he did not want the forty acres in question, it lying adjoining his farm; and it was agreed that Tinker would procure Mr. Greene to enter the four forties with a one hundred and sixty acre land warrant, and give to Cook a bond for a conveyance of the land in question, on the payment of $66.66 in one year from that time. ` That Cook paid Tinker $12 for his services in the matter, and Tinker wrote to Mr. Wood, the agent of Greene at Dixon, to enter the four forties, which was done on the 12th February; and on the 17th, Mr. Greene made his bond to Cook, in accordance with the arrangement with Tinker, and on the 23rd, Cook gave Greene his note for the amount, payable in one year, in which note these words are contained: "Said sum to apply on a bond from T. R. Greene to me, dated February 17, 1849."

The money not being paid when it became due, the bond and note were taken up, and articles of agreement were entered into between Cook and Greene for the conveyance of the land on the payment of $85, on the 1st of October, 1850.

These articles of agreement make the performance of their covenants a condition precedent, and time of the essence of the contract, and provide for a forfeiture of all Cook's right, etc., on his failure to pay, etc.

Application was made to Greene for further time after this last contract became due, and Greene said he would extend the time at forty per cent., but Cook does not seem to have accepted this offer, but tried to raise the money with which to pay up. Greene died, leaving John S., Albert G., Mary Ann, Ardelia E., and Elizabeth Greene, his heirs. John S. was appointed administrator October 17, 1853. The Greenes sold

and conveyed this and the Kilpatrick land to Whipple Harrington, for $640, or four dollars per acre, giving him a warranty deed.

In January, 1854, after the sale of the land to Harrington, Cook caused a tender to be made to John S. Greene, of $75, and demanded a conveyance to him upon the contract, and in that year broke about twenty-two acres of the land, and the next year fenced it in.

Harrington sued Cook in ejectment for the land in October, 1855, and in April, 1856, Cook filed this bill, claiming that Tinker loaned him that part of the land warrant which entered this forty, and that the title was taken to Greene to secure the price of warrant, and consequently, he had only the interest of a mortgagee, and prayed to be allowed to redeem.

No notice is shown to Harrington, except that Cook, in plowing the land owned by himself before this land was entered, plowed over into it a few feet. It had not, at the time Harrington bought it, been plowed or fenced.

The court below decreed in conformity with the prayer of the bill, and that the $75, the amount which Cook had tendered, and which it appears had, during the litigation, remained in the hands of a third party, should be paid to either the attorney of Greene or Harrington.

The decree also found that the transaction between Thomas R. Greene and Cook was a loan of money at usurious interest, directed Harrington to quit-claim to Cook, and that the Greenes give them a warranty against their own acts.

This decree was entered in the DeKalb Circuit Court.

HURD, BOOTH & POTTER, for Plaintiffs in Error.

"The law never implies and the court never presumes a trust, unless in case of absolute necessity." 2 Story's Equity Jur. 1195, and note.

"If the person who sets up a resulting trust, has paid no money, he cannot show by parol proof that the purchase was made for his benefit." 4 East, 577, and note; 7 Cranch, 176; 2 John. Ch. 408.

"A resulting trust is not founded on a contract. The whole or a part of the consideration money must be paid to raise such a trust in favor of a party." *Stephenson* v. *Thompson*, 13 Ill. 186; *Alexander* v. *Tams*, 13 Ill. 221; *Perry* v. *McHenry*, 13 Ill. 227.

But it seems to us that the most unequivocal testimony in the case is contained in the written contracts of the parties; the bond and note first given, and in the subsequent articles of agreement in which the land was treated as Greene's, and Cook stood in the character of purchaser from him. 20 Ill. 580; 21 Ill. 570.

The court should have decreed the redemption money to John S. Greene, as administrator. Whipple Harrington had no right to it, nor is he bound to take it. His remedy is upon the covenants of warranty in his deed. But the court decreed it to be paid to the attorneys of Greene and Harrington, or either of them, and excluded the parties themselves from all control over it.

BURNAP & HARVEY, for Defendant in Error.

The original transaction between Cook and Thomas R. Greene, was the purchase of one-quarter part of a land warrant for 160 acres of land, for $66.66, on a credit of one year, and the entry of a quarter quarter section of land with that warrant, at the expense of Cook, in the name of Thomas R. Greene, to secure the payment of the price of the quarter part of the warrant. The transaction amounted to the creation of a debt, and a mortgage to secure it: it was a mortgage transaction. *Smith* v. *Sackett*, 5 Gilm. 534; *Ferguson* v. *Sutphen*, 3 Gilm. 547; *Conway* v. *Alexander*, 2 Peters' Cond. R. 479; *Davis* v. *Hopkins*, 15 Ill. 519.

The original transaction being ascertained to be a mortgage, the doctrine, "once a mortgage always a mortgage," applies; and all the subsequent transactions between the parties, increasing the amount of the debt, and tending to change the relation between the parties, are void. 4 Kent, 142, 143.

Harrington bought with notice. 4 Kent, 179; 15 Peters, 111—114.

The fifth assignment of error complains that the court erred in decreeing the money in court to the clerk and attorneys. If this were wrong, the court will only modify the decree. *Shirley* v. *Spencer*, 4 Gilm. 583.

The same remark will apply to the part of the decree declaring the original transaction to be a loan of money.

WALKER, J. The evidence in this case shows, that Thomas R. Greene, in his lifetime, was engaged in the entry of government land, for future sale, and for immediate sale, to persons not having the means to enter lands which they wished to obtain. The entries were all made in his own name, bonds for conveyances were given and notes taken for the purchase money, when sales were made. In February, 1849, he, through an agent, entered the forty acre tract in controversy, and gave a bond to Cook for a conveyance, upon the payment of sixty-six dollars and sixty-six cents. The note was payable in one year from its date. It appears that Cook wanted the land, and that it was entered, the bond given and the note taken, in pursuance of a previous arrangement of the parties. The note was not paid at maturity, and at that time the bond and note were canceled, and articles of agreement were entered into between the parties, for the conveyance of the land to Cook upon his paying to Greene the sum of $85, on the first day of October, 1850. The performance of the covenants on the part of Cook are made a condition precedent, and time of the essence of the contract.

After the time of the payment had expired, it appears that Brown, on the part of Cook, applied to Greene for an extension of time. This Greene offered to give, if Cook would pay forty per cent on the money, but this proposition does not appear to have been accepted. After Greene's death, John S. Greene was appointed administrator of his estate, and in October, 1853, the heirs of Greene sold and conveyed this land and three other forty acre tracts, to Harrington, for $640, and executed to him a warranty deed. In January, 1854, Cook caused a tender of seventy-five dollars to be made to Greene's administrator, and demanded a deed. During that year,

Cook broke about twenty acres of the land, and put it under fence the ensuing year. Harrington instituted proceedings in ejectment for the recovery of this land, when Cook filed this bill to restrain a recovery, and to redeem the premises, claiming that the transaction with Greene was a mortgage and not a sale. On the hearing, the court below decreed the relief sought, and that the seventy-five dollars, previously tendered, be paid, either to the attorney of Greene or of Harrington. To reverse this decree, this writ of error is prosecuted.

If warranted in other respects, the decree that the money be paid to the attorney of either Greene or Harrington, was erroneous. If the evidence disclosed a case, authorizing a redemption, and that the proceedings at law should be restrained, no reason is perceived why either of these two defendants should be permitted to receive the money. The heirs of Greene had sold to Harrington and covenanted for title, in a much larger sum, and he had the right to rely upon his covenant, in case his title failed; and the Greenes would have been entitled to receive it, to make good, in part at least, their covenant, if a redemption was authorized. The question of the extent of the liability of the Greenes, on their covenant to Harrington, was not in controversy, and the court manifestly erred, in rendering the decree for the payment of the money to Harrington.

The question whether this transaction was a mortgage, and as such is subject to a redemption, still remains to be determined. On the face of the papers, it appears to have been an ordinary sale. The land was entered in the name of Greene; he executed at first an ordinary bond, and then an article of agreement for its conveyance, upon the payment of what was expressed to have been the purchase money. So that if by any agreement of the parties, it was a mortgage, that agreement was not embraced in the written contract. Harrington, to be affected by it, must have had notice, or known of circumstances, which put him upon inquiry, leading to notice. When he examined the records, he found that Greene owned the land, but had given first a bond, and afterwards an article of agreement for its conveyance. But he also saw, that the

covenant on the part of complainant for the prompt payment of the money, was made a condition precedent, and time of the essence of the agreement. He also saw that complainant had no deed on record, and had the right to infer that he had either forfeited or abandoned his purchase. He found nothing there which indicated, that the transaction was a mortgage from complainant to Greene, or that complainant claimed any other or different title than was disclosed by the papers themselves. The records, then, afforded no notice of his claim.

It was proved, however, that Harrington said that he knew that complainant held a bond for a deed, but that the time for its performance had expired. Now, all this may be true, and yet Harrington may not have known that complainant claimed to be a mortgagor, or the owner of the equitable fee in the premises. This is only evidence that he had notice of what appeared in the written contract, which provided for a forfeiture of the contract, if the money was not promptly paid. Or, Greene, who had the option, might sell it at auction for the best price that could be obtained. This was, however, only at Greene's option, and he might declare the contract forfeited, or sell it at auction, as he might choose. Greene's heirs chose, after default in payment for two years and upwards, and without any steps being taken by complainant towards a performance, to exercise the right of declaring a forfeiture and selling the premises.

This was not, however, a mortgage. The whole transaction shows, that it was the object of complainant to purchase the land. Nor does it appear, that it was a loan by Greene to him, of the land warrant. Nothing was said or done to indicate such a design. It is, however, said that complainant had a claim on the land, and that in equity it gives him rights that he otherwise would not have. If he had any, it was merely a verbal declaration that he designed to purchase it of government. It was open to entry by any person who should first apply, for that purpose. Complainant claims to have had no pre-emption and improvements, except a few furrows broke on the edge of the tract, which had been done while

breaking his adjoining land.   Whether it was done intention-
ally or by mistake, does not appear, and even whether it was
really on this land, is by no means certain.   But even if the
improvement had been valuable, the title was in the govern-
ment, and they were not made under a contract for its pur-
chase, and could have given no right to the land either in law
or equity.

The arrangement was, that the land should be entered by
Greene, and that he should give a bond for a conveyance,
upon the payment of the sum agreed upon by the parties,
within a stipulated time.   Greene paid his money for the land,
received a deed in his own name, and agreed to sell to com-
plainant.   The latter never had any interest in the land to
mortgage.  *Stephenson* v. *Thompson*, 13 Ill. 186.   If the par-
ties had designed to have given it the character of a mortgage,
it seems to us they would have made the entry in the name of
complainant, and he would have executed a mortgage, in
form, to Greene.

Nor do the facts in this case establish a resulting trust in
favor of complainant.   To create such a trust, in the absence
of fraud—and none seems to have existed in this case—it was
necessary that complainant should have paid all, or at least
some portion of the purchase money.   This is the settled doc-
trine of this court.  *Alexander* v. *Tams*, 13 Ill. 221, and
*Perry* v. *McHenry*, 13 Ill. 227.   These cases also establish
the rule, that a resulting trust cannot be created by contract.
Complainant paid no part of the purchase money to govern-
ment, and all the rights he acquired was by contract with
Greene.   In any view of this case, no grounds are perceived
why complainant should be entitled to relief.   The decree of
the court below is therefore reversed, and the cause remanded.

*Decree reversed.*