# JOHANNES CAPREZ *et al.*

*v*

# JOHN W. TROVER *et al.*

*Filed at Mt. Vernon November 4, 1880.*

1. MORTGAGE—*whether a mortgage or a mere verbal contract of sale.* Where a person purchases a lot of ground at the instance of another, the latter having no interest in the premises, legal or equitable, other than as a mere tenant under the then owner, the arrangement being that the proposed purchaser shall make the cash payment on the purchase price, and give his own notes for the deferred payments, and take the title in his own name, oh the verbal understanding that when reimbursed his outlays in making the purchase, and interest thereon, he will convey the premises to the person at whose instance he bought, the deed received by the purchaser will not be regarded as a mortgage to secure his advances made on the purchase, but the transaction between the purchaser and the person who procured him to make the purchase, will be regarded as a mere contract of sale by the former to the latter, to be consummated when he should be fully reimbursed for his outlays on that account.

2. It appears, in this case, there was a general account between these parties, at the time the purchase of the lot was made, and it was understood a certain amount standing to the credit of the party desiring the purchase to be made, which was equal to about one-third of the cash payment, should be applied on the purchase. This was done, and that amount was charged to him on the books. But this did not operate to change the character of the transaction from that of a mere agreement to sell, nor invest the deed made to the purchaser with the character of a mortgage.

3. The party at whose instance the lot was purchased, remained in possession of the premises, but after the purchase was not charged with rent. This was entirely consistent with his relation to the transaction as a purchaser, under the parol agreement, and did not operate to change his relation into that of a mortgagor.

4. The same party subsequently sold a part of the lot, and received a considerable sum on the purchase price, which he paid over to the holder of the legal title, but finally, because the vendor in this last transaction could not obtain the title, by reason of his not having reimbursed the first purchaser, his sale was abandoned, and the money which had been paid thereon was refunded. This circumstance was deemed to be entirely consistent with the view that the original transaction was only an agreement to sell.

5. WITNESS—*competency—party testifying on his own motion against those suing as heirs.* Where the complainants in chancery, suing as heirs, took the

deposition of a party defendant, and subsequently another person, interested in the subject matter of the suit, was brought in as a defendant, and against whom the deposition was sought to be used, the party so subsequently made defendant has the right to examine the witness in respect to any matter testified to in the deposition, as upon cross-examination, and in such case the witness will not be considered as testifying on his own motion upon such subsequent examination, so as to furnish a ground of objection to his competency to testify against the complainants.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Union county.

Messrs. LINEGAR & LANSDEN, for the appellants:

The deed of July 21, 1862, to Trover & Miller, was intended by them and Caprez as a security, in the nature of a mortgage.

Section 12 of the chapter of the Revised Statutes relating to mortgages is in these words: "Every deed conveying real estate, which shall appear to have been intended only as a security, in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage."

We will refer to a few of the later cases, decided by our Supreme Court, in which deeds, absolute in form, were treated as mortgages: *Sutphen* v. *Cushman*, 35 Ill. 186; *Reigard* v. *McNeil*, 38 id. 400; *Dwen* v. *Blake*, 44 id. 135; *Pensoneau* v. *Pulliam*, 47 id. 58; *Flemming* v. *McHale*, 47 id. 282; *Klock* v. *Walter*, 70 id. 416; *Buckman* v. *Alwood*, 71 id. 155; *Smith* v. *Cremer*, 71 id. 185; *Low* v. *Graff*, 80 id. 360; *Smith* v. *Knoebel*, 82 id. 392; *Strong* v. *Shea*, 83 id. 575; *Westlake* v. *Harton*, 85 id. 228. See, also, 1 Jones on Mort. 241 to 342.

The maxim of equity is, once a mortgage always a mortgage; and the true character of every conveyance of lands is open to inquiry. *Wynkoop* v. *Cowing*, 21 Ill. 570; *Tillson* v. *Moulton*, 23 id. 648; *Brown* v. *Gaffney*, 28 id. 149; *Reigard* v. *McNeil*, 38 id. 400; *Miller* v. *Thomas*, 14 id. 428.

There is no rule of law requiring a redemption to be made within the time limited in the mortgage. Until foreclosed, it is a subsisting right, unless barred by the lapse of time. *Preschbaker* v. *Feaman*, 32 Ill. 475; *Ewart* v. *Walling*, 42 id. 453; *Ennor* v. *Thompson*, 46 id. 215; *Smith* v. *Cremer*, 72 id. 185; *Odell* v. *Montross*, 68 N. Y. 499; *Horn* v. *Keteltas*, 46 id. 605; *Odenbaugh* v. *Bradford*, 67 Pa. St. 96; *Smith* v. *Sheldon*, 65 Ill. 219; *Halley* v. *Jackson*, 66 id. 139; 1 Jones on Mort. 350, 340.

Mr. Samuel P. Wheeler, for the appellees:

It is claimed that the deed, absolute on its face, from Towner and wife to Trover & Miller, was intended by Caprez and Trover & Miller as a security, in the nature of a mortgage. The property was in the market for sale, and Caprez was anxious to secure the same, and applied to Trover & Miller to buy it for him, which they declined to do. They simply agreed to purchase it themselves, and to sell it to Caprez at the end of two years, for the original cost and ten per cent interest on the amount. In such a case, the conveyance is not in the nature of a mortgage. *Stephenson* v. *Thompson*, 13 Ill. 190; *Wright* v. *McNeely*, 11 id. 241; *Green et al.* v. *Cook*, 29 id. 186; *Magnusson* v. *Johnson et al.* 73 id. 156.

There was here an entire absence of mutuality. There must be mutuality in all agreements to enable the parties to place each other in default. *Mix* v. *Beach et al.* 46 Ill. 311; *Sutherland et al.* v. *Parkins*, 75 id. 338.

The following authorities, amongst others, are to the effect that it must clearly appear the deed absolute was intended as a security for the loan of money or a debt existing: *Ruckman* v. *Alwood et al.* 71 Ill. 155; *Green et al.* v. *Cook*, 29 id. 186; *Dean et al.* v. *Blake*, 44 id. 135; *Knockamus* v. *Shepard et al.* 54 id. 500; *Magnusson* v. *Johnson et al.* 73 id. 156; *Ewart* v. *Walling*, 42 id. 453; *Lindauer* v. *Cummings et al.* 57 id. 195; *Prince et al.* v. *Karnes*, 59 id. 276; 4 Kent

Com. 143; 2 Story Eq. Jur. Sec. 1018; *Low* v. *Graff et al.*
80 Ill. 360.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the
Court:

On the 21st day of July, 1862, Norman K. Towner con-
veyed, by ordinary warranty deed, lot 8, in block 2, in the
city of Cairo, to John W. Trover and Robert W. Miller, for
the consideration of $2500. Trover & Miller paid Towner
$1500 of this amount, in cash, at the time, and executed and
delivered to him their two promissory notes for $500 each,
bearing interest at the rate of ten per cent per annum—one
payable in one year, and the other in two years, from date—
and also a mortgage on said lot, to secure the payment of the
same, for the residue. These notes were paid at or soon after
their maturity, and the mortgage was thereby satisfied.

Jerome Caprez had been in possession of the lot for a year
or more before the conveyance to Trover & Miller, and
he remained in possession thereafter until his death, which
occurred April 1, 1864. Some time after the conveyance to
Trover & Miller, and before the death of Caprez, Trover
& Miller caused a house to be erected on the lot, for which
they paid about the sum of $1700. On the 17th day of
April, 1866, Miller conveyed his undivided half interest in
the lot to Trover, and Trover, on the same day, conveyed the
whole lot, by deed of trust, to C. N. Hughes, trustee, to secure
a precedent debt, (of a large amount,) which he owed to the
First National Bank of Cairo. This trust deed was in due
time foreclosed, and on the 11th of May, 1868, the lot was
sold to the bank. On the 4th day of April, 1864, David J.
Baker was duly appointed administrator of the estate of
Caprez, and some time during that year he, as such adminis-
trator, had a settlement with Trover & Miller, in which they
were found to be indebted to him, as such administrator, in
the sum of $3228.44, and which sum they then paid to him.
This settlement excluded all payments which Trover & Miller

might have made in purchasing or improving this lot for Caprez, and treated the lot, with its improvements, as the property of Trover & Miller. The money thus paid to the administrator of Caprez has been used by him in 'paying claims probated against the estate and the costs of administration, with the exception of the sum of $1881.47, which remains in his hands subject to the order of the court.

On the 2d day of March, 1868, Johannes Caprez and Hans Caprez, claiming to be brothers, and the only surviving heirs at law of said Jerome Caprez, deceased, filed their bill in chancery in the circuit court of Alexander county, against said John W. Trover and Robert W. Miller, praying that the deed from Towner to Trover & Miller be declared to be a mortgage, and that the complainants be let in to redeem, and for general relief. The venue was changed to Union county, and the bill was subsequently amended, making David J. Baker, administrator, a defendant. Afterwards, by another amendment, the First National Bank of Cairo, which had obtained title to the property, and John B. Ghio, a tenant of the property, to the bank, were made defendants.

Answers were filed by the several defendants, and the cause was heard, upon bill, answers and proofs, by the circuit court of Union county, on the 9th of June, 1879, and that court thereupon decreed that complainants' bill be dismissed. From that decree an appeal was prosecuted to the Appellate Court for the Fourth District. That court, on considering the case, at its February term, 1880, affirmed the decree of the circuit court. The complainants appeal from this decree, and bring the case before us for review.

To sustain the claim that the deed of Towner to Trover & Miller is a mortgage, reliance is chiefly placed upon the answer of Trover and Miller and the deposition of Miller. That portion of the answer which counsel rely upon is as follows: "They further answer and say that some time during the year 1863, the said Jerome" (meaning Caprez) "was in possession of said lot as the lessee of one Norman K. Towner,

and during his occupancy thereof the said lot was offered for sale, and the said Jerome applied to these defendants to buy the same for him, he, the said Jerome, being without sufficient means to make said purchase; that these defendants did agree with the said Jerome to buy the said lot in their own right, and to pay for the same $1500 in cash, and gave the notes of these defendants, two in number, for $500 each, payable in one and two years, and when the entire amount should be paid, with interest, a deed was to be made to said Jerome."

We can not regard this as admitting a transaction which, in legal effect, constitutes a mortgage. They bought the lot in their own right—that is, as we understand their meaning, on their own account. They loaned no money to Caprez. Caprez did not even sign the notes for the deferred payments, but Trover & Miller gave their own notes therefor. It is true it is admitted that Caprez was to have a deed for the property when the entire cost of the property and interest thereon should be paid by him to Trover & Miller. But this, as we understand the admission, amounts only to a contract by Trover & Miller to sell the property to Caprez for that amount, and convey to him when payment shall be made.

In that portion of the answer immediately preceding what has been quoted, Trover & Miller " deny the existence of any valid agreement between them and said Jerome, by which they were to buy and hold the title to said lot for said Jerome." And the portion of the answer immediately succeeding the part quoted and relied upon by appellants' counsel, is as follows : " That said agreement was not evidenced by any memoranda in writing, and defendants are advised the same was null and void; and they specially plead and rely on the 9th section of chapter 59 of the Revised Statutes of the State of Illinois, which is as follows :" Then is. copied the section, after which is added : " These defendants positively deny that any other agreement respecting said lot was ever made between said Jerome and defendants."

It is but just to take into consideration these parts of the answer with the others, and when they are all considered together, we can see but little room for doubt that it was designed to entirely exclude the idea of a mortgage, and, we think, it does injustice to the language employed to say that it admits facts which, in legal contemplation, constitute a mortgage.

That portion of Miller's deposition upon which special reliance is placed by counsel for appellants, is as follows: "Something less than two years before Mr. Caprez's death, he was occupying said lot, and the lot was offered for sale for $2500. Mr. Caprez wanted to buy the lot, but had not the means to do so. He came to our firm, Trover & Miller, and asked us to purchase the lot, wanting us to advance the first payment, $1500. We were to pay that amount and give our notes for the balance, $500 each, payable in one and two years. He was then to pay us back the money we advanced, and to have means to pay the two notes when due, paying us interest on the money we advanced. When he did that we were to deed him the lot. He had at the time of the purchase, about $537.85, which portion was applied as a part of the $1500 paid by us. We gave our notes, as stated, for $500 each, and advanced the said $1500, less the amount of $537.85 paid by Caprez at the time of the purchase."

But the following additional statements made by Miller at the same time, and as a part of the same deposition, should also be taken into consideration: "We made the purchase expecting to take the chances in the trade. If Caprez paid for it according to agreement, he was to have it; if anything happened and he failed to do so, we expected to foot the bill and take the lot, as he had nothing to fall back on."

This deposition was taken by appellant on the 30th of September, 1868, nearly three years before the First National Bank of Cairo was made defendant to the bill. Afterwards, and on the 22d of March, 1879, when the bank had been made defendant, the deposition of Miller was again taken,

this time by appellees, and, before proceeding to consider its effect, it is necessary to pass upon an exception taken to the ruling of the circuit court in permitting it to be read upon the hearing.

The ground upon which this exception was taken was that Miller could not testify of his own motion, because appellants were suing as heirs, etc. A complete answer to this is, Miller does not testify of his own motion. Appellants called and examined him as a witness at their own instance, before making the First National Bank of Cairo a defendant, and used that deposition on the hearing to make out a case against it. The bank could not thus be deprived of the right of cross-examination. It was, when made a party, entitled to examine the witness as to all facts testified to by him upon his former examination.

In this deposition Miller testified : "Caprez made an application to get us to assist him to buy the lot,—to buy it for him. He never applied to borrow money to buy the lot, so far as I know. Trover & Miller's money paid for the property at the time of the purchase. They agreed to let him have the property at the expiration of the time the two notes matured, if he furnished the money to pay them, or had the money deposited with us to meet them as they fell due. *  *  * The agreement between Trover & Miller and Caprez was that we should buy the lot and pay for it, and when the deferred notes fell due, if he had the money with us to pay the money we had paid and to pay the notes, we would then sell him the property for what it cost."

*Stephenson* v. *Thompson,* 13 Ill. 186, seems to be entirely analogous, in all substantial matters, to the present case. There, Thompson purchased the property in controversy at the instance of Lindsay, for the sum of $554.63, of which $200 were paid down, and for the balance Thompson gave his note payable in five months, with ten per cent interest, which he subsequently paid. No contract in writing ever existed between Thompson and Lindsay in reference to the

land, but there was a parol understanding between them that Thompson should convey the premises to Lindsay, on being reimbursed his advances by Lindsay. The court said:

"Upon this state of facts it is very clear that Lindsay had no such interest in the premises as could be asserted in a court of equity. * *. * The property was purchased by Thompson in his own name and paid for with his own money. He was not guilty of any bad faith in taking the title to himself, but he received it with the knowledge and consent of Lindsay. The most that can be said is, that he agreed by parol to let Lindsay have the property on being reimbursed his advances. But how does this differ from any other case, where one agrees by parol to convey real estate to another, on the payment of a stipulated price, which would clearly be a case directly within the statute which declares that no action shall be brought upon any contract for the sale of lands, unless the same be in writing and signed by the party to be charged therewith? A verbal agreement to purchase land for the benefit of another is void, under the Statute of Frauds, and can not be enforced against a purchaser who, in the absence of fraud, has paid for the land with his own money, and taken a conveyance in his own name." * * *

And the court, after holding that no trust could arise in favor of Lindsay upon the facts of the case, in respect to the point there urged, that Thompson took the deed as a mortgage to secure himself, said: "It has, however, been insisted that Thompson took the deed to himself as a security for the advances he made for Lindsay, and that the conveyance is to be treated as a mortgage. The money paid for the land did not come from Lindsay, but from Thompson; so, also, the deed was not from Lindsay, but from the sheriff, whose duty it was to make an absolute conveyance of all the debtor's interest in the premises. * * * The transaction between Lindsay and Thompson was simply a contract for a purchase of the premises by the former from the latter, and did not possess one attribute of a mortgage."

So, here, the money paid for the lot did not come from Caprez, but from Trover & Miller. The deed was not from Caprez, but from Towner, whose duty it was to make an absolute conveyance of the lot. He was entitled to take no mortgage, and his deed was executed as it was intended by all the parties it should be. Indeed, Caprez never had an interest in the lot which was susceptible of being mortgaged. He never had the legal title—and his only claim of an equitable title is a parol contract (condemned by the Statute of Frauds,) that the lot would be conveyed to him upon his reimbursing Trover & Miller their outlays in purchasing and improving it.

The circumstance that, in the account of Trover & Miller with Caprez, the amounts paid for the lot and in improving it, are entered on their books as items of debt, chargeable against Caprez, is of no significance in proving that the deed from Towner to them is to be regarded as a mortgage, because it is entirely consistent with the parol contract, admitted on all hands, that Caprez should repay Trover & Miller these amounts, and in consideration thereof, they should convey to him the property ; and the same may be said in respect of the failure to charge Caprez with rent. His possession is to be considered as that of purchaser, under a parol contract, and not that of mortgagor.

There is another circumstance claimed by counsel to aid the view that the Towner deed should be considered as a mortgage, which, in our opinion, has no such effect.

In 1863, Caprez contracted with one Franz Pohle, to sell him an undivided half of the lot. This was known to Trover. Pohle paid Caprez $2000 on the purchase. Trover took the money from Caprez. But the trade fell through because Caprez could not make a deed. Trover paid Pohle his money back again, and he left the house. Pohle says, in his evidence: "I did not get the deed, for Caprez said he could not make the deed, because he had two payments to

30—96 ILL.

make on the lot before he could get a deed himself." This, if not strong proof that Caprez understood he had a mere contract with Trover & Miller to purchase the property, is certainly entirely consistent with that view.

Without further referring to the evidence in detail, we conclude by saying, that a vital defect in the case contended for by appellants is, Caprez did not, at the time of the conveyance by Towner to Trover & Miller, have either a legal or equitable estate in the property, but only a parol contract with Trover & Miller, that they would sell and convey to him.

It is not claimed that the case made is one in which a court of equity would decree a specific performance of contract, nor that a resulting trust in favor of Caprez has been established, so it is unnecessary to consider the case in either of those aspects.

The present case differs from *Reigard* v. *McNeil,* 38 Ill. 400, and *Strong et al.* v. *Shea et al.* 83 id. 575, in this: In the first named case McNeil, being the owner of land which had been sold on execution, and which was subject to redemption, borrowed money of McGoon, upon the agreement that he was to buy in the land, at a sheriff's sale, upon a junior judgment, take title to the same, and hold it as security for the repayment of the borrowed money. In the last named case, Shea was the owner of property which had been conveyed, in trust, to secure a debt to Eisendrath, and a deed was made by the trustee conveying the property to Eisendrath. Shea was in possession, claiming a homestead; Eisendrath recognized and allowed Shea's right to have a reconveyance of the property, upon being reimbursed his outlay. Boyer agreed to advance this sum and hold the title to secure a repayment of the amount.

In both cases there was a prior title, which could be the subject of a mortgage, and in both a loan; here there was neither a prior title in Caprez nor a loan.

We think the circuit and Appellate courts properly held there was no mortgage, and the decree, dismissing the bill, was right. The judgment of the Appellate Court is affirmed.

<div align="right">

*Judgment affirmed.*