### Morton M. Thompson v. Rolla B. Thompson.

STATUTE OF FRAUDS—*when does not apply.* The statute of frauds does not apply to a resulting trust.

Bill in chancery. Appeal from the Circuit Court of Jackson County; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the February term, 1907. Reversed and remanded. Opinion filed September 13, 1907.

YOUNGBLOOD & BARR and R. J. STEPHENS, for appellant.

JAMES H. MARTIN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellant filed a bill in chancery to require appellee to receive from him a sum of money therein named and to make, execute, acknowledge and deliver to appellant, a quitclaim deed conveying to him certain premises therein described, and for general relief. The bill also asked for an injunction, restraining appellee from taking possession of a coal mine on said premises, and from interfering with appellant's possession, and from conveying or encumbering the

Thompson v. Thompson.

same.  Upon a hearing the court dismissed the bill for want
of equity and dissolved the injunction.

Appellant, as it appears from the record, in the latter
part of 1901, bargained for the land in question with W.
C. Baird, who held a bond for a deed from the same from
Mrs. Christine Jageman.  Said land adjoined premises
owned by appellant in Jackson county, Illinois, and on a
portion of it was located a coal mine.  Appellant applied
to appellee, who is his brother, for money to pay for the
land, and the latter gave him a check for $675 the amount
asked for, which appellant cashed at the bank.  Appellant
then went to Mr. Baird and paid him $225 and, as appellant
claims, Baird then assigned the bond over to him.

Appellant afterwards went to one Herbert, agent for Mrs.
Jageman, and paid him $475, the amount claimed by Her-
bert to be due her, and told Herbert to make the deed to
Rolla B. Thompson.  The total amount paid for the land
was $700, which was $25 more than the amount furnished
by appellee, the excess being paid by appellant.  The deed
was duly executed December 9, 1901, and sometime after-
wards appellant took it to the circuit clerk's office, had it
recorded and later gave it to appellee.  Appellant immedi-
ately went into possession of the land subject to the rights
of a tenant, whose lease did not expire until the following
year.  This tenant was working a small coal mine on the
place and paid a royalty of four cents a ton on the coal to
appellant.  Appellant rerented the place from time to time,
paid the taxes, built a bridge over a creek running through
the premises and opened up a new coal mine, putting in
screens and platforms, and having entries turned off.  The
total amount paid by him in the way of improvements in
excess of the amount received by him from the land was
over $400.  In the fall of 1904 appellant asked appellee
for a deed to the land and offered to pay him the amount
advanced by him with seven per cent interest.  There was
some controversy between the parties at the time, concern-
ing the matter, but nothing resulted from it.  On March
28, 1905, appellant sent appellee a check for $845 on the

First National Bank of Carbondale and a quit-claim deed to the premises in question, with the request that he execute the deed. Shortly afterwards there was further conversation between the parties concerning the matter and still later, on April 4, 1905, appellee wrote appellant a letter saying, " The more I think about this deal the more I am convinced there are two sides to be considered. I think I know what is right between us in this case and am satisfied you do, too, and when you consider everything in connection with the deal, you will lay aside a certain amount of selfishness and we can adjust things as they should be. I enclose draft and also blank deed just as mailed to me by you." In the fall of 1905 appellant claims to have ascertained that appellee was going to take possession of the land, and he thereupon tendered him the $675 with interest thereon, compounded at the rate of seven per cent per annum, which being refused he filed this bill.

It plainly appeared that appellant carried on all the negotiations concerning the purchase of the land and that appellee took no part therein, but furnished nearly all the money with which the purchase was made at the request of appellant. Appellant testified that he told his brother he had bought the land and did not want it to get away from him, and asked his brother to loan him $675, saying " You just make me a check to the First National Bank and when I have the deed made, I will have it made to you so that you will be secure in the payment," and that appellee said "All right," and wrote out a check upon which appellant got the money; that when he asked his brother to make the deed in the fall of 1904, appellee said "I have never got anything out of it yet," to which appellant replied "You have got nothing in it but your money and the interest on it"; that appellee then asked him what interest or money was worth, and appellant said he intended to give him seven per cent, although he could then get it for six per cent; that after writing the letter of March 28, 1905, enclosing check and sending the blank deed to be signed, appellant had a conversation with appellee in which the

latter said, "Mort, I do not know about signing that deed, that land is now worth $1,500 or $2,000"; to which appellant answered, "What does that have to do with it, all you have to do with the land is your money and the interest on it," and appellee then said, "It looks like a right smart of a speculation" and said he "would see about it"; that soon afterwards appellee wrote the letter of April 4, 1905, above referred to.

On the other hand appellee denied absolutely that he made the arrangement claimed to have been made with him by appellant, or that he made the subsequent statements in relation thereto, testified to by appellant. His testimony of the circumstances under which he came to furnish the $675 used to purchase the land was, that appellant came to him and told him that the land could be bought for that amount of money; that he needed the coal to fill the contract he had; that he did not have the money to pay for the land and wanted appellee to put that amount of money in the land, but at that time appellee refused to furnish the money; that later appellant came to him and told him the matter had to be closed up, saying also, "I want to fix it now. You go, Rolla, and draw me a check at Mitchell's and I can get the land for $675 and I will have the deed made to you. You cannot lose anything"; that there was nothing said by appellant about borrowing the money, or paying any interest, or repaying the money at any time.

Appellee testified alone in his own behalf but several witnesses testified to facts tending to corroborate appellant.

The greater preponderance of the evidence including the testimony of the witnesses, the letters and the circumstances, clearly sustain the claim of appellant that the premises in question were conveyed to appellee to secure him for the money advanced upon the purchase. Appellee does not appear to have asserted any claim to the real ownership until after appellant had expended in improvements upon the land over $400 in addition to the rents or royalties received therefrom. Upon the facts the equities of the case were plainly with appellant. Appellee, however, in his

answer, sets up section 2 of the Statute of Frauds, which provides that no action shall be brought to charge any person upon any contract, for the sale of lands, etc., unless such contract or some memorandum or note thereof shall be in writing. Also section 9 of the same statute, which provides that all declarations or creations of trusts, etc., shall be manifested and proved by some writing signed by the party who is, by law, enabled to declare such trust, etc.

Appellee's theory is that, under the circumstances, the deed cannot in any event be considered as a mortgage upon the premises to secure the money advanced by him, and that even if he should not be found to be the *bona fide* purchaser of the land, the agreement between him and his brother must, in law, be considered as amounting either to an oral contract, for the sale and conveyance of the land, which would be void under section 2 of the Statute of Frauds, or an express trust, which, as there was no writing to evidence it, would be void under section 9 of the same statute. If the transaction falls under either of the last two heads, the contention of appellee is correct.

Appellee also contends that where the promise to convey land upon the payment of a sum of money is made to a party, other than the grantor, no mortgage is thereby created, but in order to constitute a deed absolute in form a mortgage, the alleged mortgagor must have had some interest as owner in the land at the time of the making of the contract and it must clearly appear that the relation of debtor and creditor existed between the parties.

In Stephenson v. Thompson, 13 Ill., 186, it is said in the course of the opinion: "A verbal agreement to purchase land for the benefit of another, is void under the statute of frauds, and cannot be enforced against a purchaser, who in the absence of fraud, has paid for the land with his own money and taken the conveyance in his own name." In that case, however, it was alleged that whatever rights appellee Thompson acquired to the property, he took in trust and for the use of one Lindsey, and that it was verbally agreed between them that Thompson should hold the property as

Thompson v. Thompson.

trustee for Lindsey and it was also said in the opinion, that the idea that Thompson, after fairly purchasing the lot in his own name and paying for the same, should be compelled to convey it to a person who paid no part of the purchase money, was preposterous.

The Statute of Frauds was set up in that case and as the alleged agreement was not in writing, the trust, which was express, could not of course be enforced. In the case at bar, however, the evidence does not show that appellee purchased the land for the benefit of appellant, but that appellant purchased the land himself, paying a small portion of the purchase money, and had the land conveyed to appellee to secure him for the money advanced by him. Appellee also cites Caprez v. Trover, 96 Ill., 456; Heaton v. Gaines, 198 Ill., 479, and Conkey v. Rex, 212 Ill., 444, in support of the proposition that to constitute a deed absolute in form, a mortgage, the alleged mortgagor must have had some interest in the premises claimed to have been mortgaged.

In the case before us, appellant had some interest in the premises, as he paid $25 of the purchase money and took, as he says, an assignment of the bond for a deed to himself before the deed was made to appellee. This we think sufficient to comply with the rule that the claimed mortgagor must have some interest in the property in a case like this, where the equities appear to be all on his side, and the claimed mortgagee has stood by and permitted the claimed mortgagor, without protest, to put all the rents and profits upon improvements on the land, and in addition thereto, a sum equal to much more than half of the original purchase money.

In Baker v. Bishop Hill Colony, 45 Ill., 264, it is held that one who holds a bond for a deed to land has an equity therein which he could mortgage. As appellant held a bond for a deed at the time the deed was made to appellant, he had an equity in the land which he could mortgage. This State, however, is not committed to the doctrine that where the promise to convey land is made to a person other than

3

the grantor by the grantee in a deed absolute, it cannot, under any circumstances, be enforced.

In Scott v. Beach, 172 Ill., 273, a bill in chancery was filed showing that Beach had made a verbal contract with Margaret J. Boden, the owner of certain lands, by which she sold the same to him for certain amounts to be paid on the making of the deed of conveyance; that about the time the purchase was made Beach made a verbal agreement with Scott whereby Scott was to advance the money necessary for the purchase as a loan, to complainant, for the term of four years, the real estate purchased to be conveyed to Scott as security for the loan; that the land was conveyed to Scott, who paid the purchase price, and Beach took possession of the premises, residing thereon and making valuable and permanent improvements; that Scott had refused to carry out the agreement between the parties.

Scott in his answer denied that he had loaned or agreed to loan any money to Beach, as stated in the bill and also set up the Statute of Frauds. The trial court granted the relief prayed for by Beach.

In the course of its opinion the Supreme Court said: "The decision of the trial court was evidently based upon the theory that appellant loaned the money to appellee to purchase the land in controversy, and took title to the same in himself as security, thus creating a resulting trust in favor of appellee by way of a mortgage, and if the evidence sustains this theory, there can be no question as to the correctness of the decision," and the court held that the facts in the case sustained the claims of Beach and affirmed the decree.

The case last referred to appears to have been based upon the case of Reeve v. Strawn, 14 Ill., 94. In that case Reeve claimed that Strawn loaned him the money to purchase certain lands and took a deed to himself by way of mortgage to secure its payment under a promise that Reeve should be allowed to pay the amount of the purchase money and interest and have a conveyance of the premises. Strawn denied that there was a loan and insisted that he paid his

own money and bought the land in his own name and for his own use; that any agreement between the parties was a parol contract for the sale of the land and pleaded the Statute of Frauds. In that case the court said: "There can be no serious controversy about the law in this case. If the facts are as insisted by the complainants, then a resulting trust is created in the nature of a mortgage, and there can be no doubt about the right of complainants to redeem, but if on the other hand, there was no loan of the purchase money and Strawn paid his own funds for the land, no parol agreement between the parties that Strawn should purchase, for the use and benefit of Reeve, or that Reeve should at any time, have the right to purchase it, will entitle the complainants to the relief sought, for then it is nothing but a simple parol agreement for the sale of land, which is at once cut off by a plea of the Statute of Frauds which has been interposed. The serious question in the case then, is one of fact."

In Davis v. Hopkins, 15 Ill., 519, it was held that where one, at a public sale of land by the government, agreed by parol with another person, then in possession of such land and who had made improvements thereon, to bid off his claim and advance the money at a rate of interest agreed upon, and took the title in his own name, such a contract was not within the Statute of Frauds, but was a loan, and a redemption from the deed could be enforced by the proper party.

Upon the authority of the above cases and with the views of the facts in regard to this case, which we have above expressed, we are of opinion the conveyance to appellee created a resulting trust in the nature of a mortgage, from which appellant had a right to redeem.

The decree is reversed and the cause remanded with instructions to the court below to enter a decree in accordance with the views herein expressed.

*Reversed and remanded.*