RACHEL ANN HEATON et al.

v.

HOMER GAINES.

Opinion filed October 25, 1902.

1. DEEDS—*law presumes that a deed is what it purports to be.* One claiming a deed absolute in form to be a mortgage has the burden of overcoming the presumption of law that the deed is what it purports to be.

2. SAME—*indebtedness to be secured is essential to a mortgage.* In order to establish the fact that a deed absolute upon its face is a mortgage, it must appear that a debt existed, due from the alleged mortgagor to the person claimed to be the mortgagee.

3. SAME—*effect where deed was not made by the party alleged to be the mortgagor.* Where the deed sought to be declared to be a mortgage was not made by the alleged mortgagor but by a third party, it must appear that such party merely held title as security for a debt owing to himself from the alleged mortgagor.

4. SAME—*without an ownership in lands there can be no mortgage of them.* A deed absolute in form cannot be said to be intended as a mortgage to secure an indebtedness of a third party, unless such third party has an interest, as owner, in the lands conveyed.

5. EVIDENCE—*grantor's declarations, after deed, not binding upon the grantee.* ·Statements or declarations of a grantor with reference to his title after he has conveyed the land are not binding upon the grantee.

*Gaines v. Heaton,* 100 Ill. App. 26, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Knox county; the Hon. G. W. THOMPSON, Judge, presiding.

This is a bill, filed on December 20, 1899, in the circuit court of Knox county by the appellants, Rachel Ann Heaton, widow of Edward Smith Heaton, deceased, and Thomas C. Heaton, Ella Craver, Lina W. Himes, and Eva Collinson, children and only heirs-at-law of said Edward Smith Heaton, against the appellee, Homer Gaines, for the purpose of redeeming 280 acres of land in said county from an alleged mortgage in the shape of an ab-

solute deed, charged to have been caused to be executed by the said Edward Smith Heaton in his lifetime and on December 21, 1883, to the appellee, Gaines, appellants asking for an accounting, and offering to pay what should be found to be due to the appellee upon such accounting. Appellee filed an answer denying the material allegations of the bill. Replication was filed to the answer, and references were had to a master in chancery to take testimony, and report his conclusions. The master took testimony, and made a report. The cause was heard upon exceptions to the master's report, and the circuit court entered a decree that the appellants pay to appellee on or before November 1, 1901, the sum of $11,242.34, with interest from the date of the decree at the rate of five per cent per annum, and that, upon such payment, the appellee should execute a deed of said premises to the complainants, and that thereupon said mortgage upon said premises should be decreed to be redeemed and canceled; and it was further decreed that, upon failure of appellants to pay said sum and interest, complainants should surrender the possession of the premises to appellee, and all of their right, title and equity of redemption should be cut off and foreclosed, and the master should execute a deed to appellee, conveying their interest to him in said premises. An appeal was taken from the decree, so entered by the circuit court, to the Appellate Court; and the Appellate Court has entered a judgment, reversing the decree and remanding the cause with directions to the circuit court to dismiss the bill for want of equity. The present appeal is prosecuted from such judgment of the Appellate Court.

The bill alleges that Edward Smith Heaton in his lifetime secured a loan of Homer Gaines of $8863.00 on December 21, 1883, and to secure the payment of the same on that day caused, by an absolute deed of conveyance of that date, to be conveyed to appellee in fee simple said 280 acres of land, being described as follows: the east

half of the south-west quarter, and the west half of the south-east quarter, and the north-west quarter of the south-west quarter of section 4, and the east half of the south-east quarter of section 5 in township. 12, north range 4, east of the fourth principal meridian, in Knox county, which deed was on December 27, 1883, filed for record in the recorder's office of said county; that said deed, though absolute on its face, was merely a security for the payment of said money, and that, upon payment thereof, appellee was to re-convey the premises to Edward Smith Heaton, or his heirs; that said Heaton was, at the time of making the said deed and for a long time theretofore had been, and from that time up to the time of his death on June 19, 1899, had been, and was, in possession of said lands; that, since his death, appellants, as his widow and heirs, have been and are in possession thereof; that on April 1, 1893, said Edward Smith Heaton sold to Sarah E. King said east half of the south-east quarter of section 5, and appellee, at Heaton's request, conveyed said property to said King, and received therefor $4000.00 in cash to be applied upon the indebtedness of said Heaton to appellee; that, without the knowledge of Heaton or appellants, appellee, on January 5, 1896, executed to one Zelotes Cooley a mortgage to secure $4000.00 on the east half of the south-west quarter and the west half of the south-west quarter, and the west half of the south-east quarter of said section 4, recorded in said recorder's office on January 25, 1896; that said Heaton in his lifetime did not receive said sum of $4000.00, nor have appellants ever received any portion thereof; that Edward Smith Heaton did not know of said mortgage in his lifetime, and the knowledge of the same has only come to the appellants recently; that appellee received and applied said sum of $4000.00, borrowed of said Cooley, to his own use; that said Heaton, while alive, paid to appellee large sums of money almost equal to the sum alleged to have been borrowed by him from the

appellee, so that his indebtedness to the appellee at his death was very small, etc.

Appellee in his answer denies that the deed of December 21, 1883, executed by Edward Smith Heaton to himself, was a mortgage executed to secure a loan of $8863.00, and avers that said land was purchased by appellee from one M. M. Ford, and that Heaton remained in possession of the same, as appellee's tenant, under contract to pay him an agreed rental, including the payment of taxes, and was in possession, as such tenant, at the time of his death, and was then indebted for back rents on said premises. The answer charges that the sale to Sarah E. King was made by appellee of his own property in his own right and for his own benefit, and that the mortgage to Cooley was executed by appellee upon his own property and for his own benefit. In the answer appellee offers, in consideration of the poverty of appellants, that, in case they will pay him the amount invested by him in said lands, including the indebtedness of said Edward Smith Heaton and one T. C. Heaton to him, together with a sum equal to the amount paid by him to M. M. Ford as purchase money, and interest thereon from the date of said purchase at seven per cent per annum, together with the costs, that he would sell and convey the said premises to any person who would pay that amount therefor; "any excess paid by such purchaser respondent will freely give to complainant, the widow of said Edward Smith Heaton as commission for her finding a purchaser, the transaction to be closed on or before March 1, 1900."

The proof shows that one N. C. Heaton was the father of said Edward Smith Heaton, who died on June 19, 1899, and that Edward S. Heaton had a brother, named Thomas C. Heaton, the appellant Thomas C. Heaton being the son of Edward Smith Heaton.

In 1868 or 1869, or thereabouts, mortgages were executed by N. C. Heaton, T. C. Heaton and E. S. Heaton

upon the 280 acres in question to one Daniel Fuqua and
one Charles C. Sheppard. Subsequently to the execu-
tion of these mortgages, N. C. Heaton died, and his heirs,
except E. S. Heaton, conveyed said premises to E. S.
Heaton and Thomas C. Heaton. Thomas C. Heaton and
wife appear to have conveyed their interest in the prem-
ises to the said Edward Smith Heaton, except 65 acres
in the north part of the east half of the south-east quar-
ter of section 5. On January 12, 1878, Edward Smith
Heaton and wife conveyed to T. C. Heaton said 65 acres
off the north end of the east half of the south-east quar-
ter of section 5 above mentioned. In March, 1878, E. S.
Heaton and wife executed a mortgage to M. M. Ford upon
215 acres of said tract, being all of the same except the
65 acres, so deeded to T. C. Heaton. T. C. Heaton and
wife in September, 1878, executed a mortgage upon said
65 acres to appellee to secure a note for $712.11, drawing
interest at ten per cent. Said mortgages to Ford and
to appellee were subject to the mortgages executed to
Fuqua and Sheppard. Ford appears to have been an
agent and attorney for Sheppard. Proceedings were in-
stituted to foreclose the mortgage to Fuqua, and to that
proceeding Edward S. Heaton, Thomas C. Heaton, the
heirs of N. C. Heaton, and Charles C. Sheppard and M. M.
Ford were made defendants. At the foreclosure sale of
the Fuqua mortgage, 160 acres of the tract, to-wit, the
west half of the south-east quarter and the east half of
the south-west quarter of section 4 were sold to Fuqua,
and a certificate of sale was issued to him, which certifi-
cate of sale was subsequently assigned to one Martin
Spencer, and, on December 25, 1880, a master's deed was
executed, conveying said last named premises to Martin
Spencer, which deed was recorded on April 23, 1883.

Subsequently, proceedings were also instituted by
Charles C. Sheppard to foreclose the mortgage to him,
and Edward S. Heaton and Thomas C. Heaton and Ford
were made defendants to that mortgage. At the fore-

closure sale under the Sheppard mortgage, the remaining 120 acres of the land, to-wit, the north-west quarter of the south-west quarter of section 4 and the east half of the south-east quarter of section 5 were sold to Charles C. Sheppard, and, on March 27, 1883, a master's deed, conveying said last named premises, was executed to Charles C. Sheppard. By deed dated May 1, 1883, Jane A. Spencer, widow, and Judson Spencer, sole heir of Martin Spencer, conveyed to Milton M. Ford the east half of the south-west quarter of section 4 and the west half of the south-east quarter of section 4, being 160 acres of the tract in question. By deed, dated November 20, 1883, and recorded December 27, 1883, Charles C. Sheppard and wife conveyed to said Ford the remaining 120 acres of said tract, to-wit, the north-west quarter of the south-west quarter of section 4 and the east half of the south-east quarter of section 5. By deed, dated December 21, 1883, M. M. Ford and his wife conveyed to Homer Gaines, the appellee, the whole of said 280 acres as above described, and here in controversy. A mortgage for $6500.00 was executed by appellee, Gaines and wife, to Zelotes Cooley on January 5, 1891, due five years after date, conveying the whole of the 280 acres in question, which mortgage was released on January 25, 1896. On January 5, 1896, another mortgage to secure $4000.00 was executed by Gaines and wife to Cooley, due five years after date, on the 200 acres of land in section 4, which mortgage was released on January 4, 1901. The record also shows that a judgment was rendered on October 16, 1882, for $618.37 and costs in favor of one Simon Collison against Edward S. Heaton and others, upon which several executions were issued, and all were returned unsatisfied.

SHUMWAY & RICE, for appellants.

WILLIAMS, LAWRENCE & WELSH, and F. H. GAINES, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

In order to sustain the allegations of the bill in this case, it must be shown that the deed of December 21, 1883, executed to appellee, though absolute in form, was in fact a mortgage to secure an indebtedness from Edward Smith Heaton to appellee.

The deed was not executed by Edward Smith Heaton, under whom appellants claim their right to redeem, but it was executed by M. M. Ford to the appellee. There is no satisfactory evidence to show that M. M. Ford, when he conveyed the property to appellee on December 21, 1883, held the title as mortgagee, holding an indebtedness against Edward Smith Heaton, and subject to the right of the latter to redeem the property upon the payment of a mortgage indebtedness. If the deed from Ford to appellee was merely the transfer of a mortgage indebtedness by Ford, mortgagee, so as to make appellee a mortgagee as the assignee of Ford, then it must appear that Ford held the title as security for an indebtedness to himself. The relation of debtor and creditor between Edward Smith Heaton and Ford at the time of the execution of the deed by the latter to appellee is not established by the proofs in the case. Mortgages had been executed by Edward Smith Heaton and his brother and father to Fuqua and Sheppard. These mortgages had been duly and legally foreclosed, and the title had passed by masters' deeds to Martin Spencer and Charles C. Sheppard, as purchasers at the masters' sales, or as assignees of the certificates of sale executed to the purchasers. There is no proof that, when Spencer and Sheppard obtained their deeds from the master, they held such deeds as security for an indebtedness existing to them from Edward Smith Heaton. On the contrary, by the foreclosure sales all the title of Edward Smith Heaton in the premises was foreclosed and barred, and passed to Spencer and Sheppard. Edward Smith Heaton no longer

had any interest in the property after the foreclosure sales and the execution of the masters' deeds. When, in the spring and fall of 1883, the widow and heir of Martin Spencer, and Charles C. Sheppard and wife, deeded these premises to M. M. Ford, Ford took the title free from any right of redemption in Edward Smith Heaton, so far as the record shows. The equity of redemption of Edward Smith Heaton had been cut off by the masters' sales and deeds. Certainly, on December 21, 1883, when Ford, holding the legal title, deeded the premises to the appellee, Homer Gaines, appellee became the owner of the property upon the face of the record. It is true that a deed, absolute upon its face, may be shown by parol to be a mortgage. But the proof showing this fact must be clear, satisfactory and convincing. The law presumes, in the absence of proof to the contrary, that a deed is what it purports to be, that is to say, an absolute conveyance. The burden of proof is upon the party, claiming such an absolute deed to be a mortgage, to sustain his claim by evidence sufficient to overcome this presumption of the law. (*Keithley* v. *Wood*, 151 Ill. 566; *Helm* v. *Boyd*, 124 id. 370; *Burgett* v. *Osborne*, 172 id. 227).

The deed from Ford to appellee could not be a mortgage to secure an indebtedness from Edward Smith Heaton, unless it appeared in some way that Edward Smith Heaton had an interest as owner in the lands thereby conveyed. Without an ownership in lands there can be no mortgage of them. (*Payne's Admr.* v. *Patterson's Admrs.* 77 Pa. St. 136; *Carpenter* v. *Plagge*, 192 Ill. 82; *Burgett* v. *Osborne, supra*). Edward Smith Heaton cannot be said to have owned any equity of redemption, which was kept alive by any agreement between Ford and the appellee. Heaton had no interest in the property, which could sustain a parol agreement by appellee to buy the property for his benefit, and to convey it to him when required. Inasmuch as such an agreement, even if it existed, created an interest in land by parol, it could not be sus-

tained under the Statute of Frauds. A naked promise by appellee to buy lands in his own name, pay for them with his own money, and hold them for the benefit of Edward Smith Heaton, could not be enforced in equity. (*Howland* v. *Blake*, 97 U. S. 624; *Stephenson* v. *Thompson*, 13 Ill. 186; *Perry* v. *McHenry*, id. 227; *Magnusson* v. *Johnson*, 73 id. 156; *Caprez* v. *Trover*, 96 id. 456; *Wilson* v. *McDowell*, 78 id. 514). In *Magnusson* v. *Johnson*, *supra*, it was held that, where land is sold under a deed of trust and the title vested in the purchaser, and a third party, at the request of the original owner buys from the purchaser, giving his note for the purchase money, and takes a contract in writing for the conveyance of the land to him upon payment of his note, and then agrees verbally with the original owner that, if he will pay the note when due, he may have the land, and the original owner makes no promise to pay and does not in fact pay, and the deed is executed to the purchaser, his title is absolute and is not held as a security for the payment of the money paid by him. In *Wilson* v. *McDowell*, *supra*, it was held that, where a deed of trust has been foreclosed by a sale under its provisions, and the fee vested in the *cestui que trust*, a party, purchasing from him afterwards, cannot be considered as having purchased the deed of trust to be held as security for the money expended in such purchase, although he may have made a verbal promise to the grantor, that he would purchase the land, and convey it to him upon re-payment to him of all money expended. Where the equity of redemption has been completely barred, and the life of the ownership has expired, there is nothing left in the property which can be the subject of mortgage.

In our view of the evidence, it is not only shown here, that Heaton had no ownership in the lands at the time of the conveyance by Ford to appellee in 1883, but it is further shown, that the lands were purchased by appellee for himself of Ford without any previous conversa-

tion with Heaton, or previous negotiations with Heaton for such purchase.

The appellants, who were the complainants below, put the appellee on the stand, and made him their own witness. Therefore, no question arises as to the competency of the evidence of appellee. Appellee swears, that he purchased the lands from Ford for the amount, which Ford claimed to have invested in the lands. He says that his object in purchasing Ford's interest in the land was to save the amount, which was due to him from Thomas C. Heaton, and for which indebtedness from Thomas C. Heaton to himself he had held a mortgage, subject to the Fuqua and Sheppard mortgages, upon the 65 acres, deeded to Thomas C. Heaton by Edward Smith Heaton. The amount, invested by Ford in the property, was figured up between himself and appellee, and ascertained to be $8890.45. Appellee swears that he executed to Ford his two notes, one for $5500.00, and the other for $1000.00, making $6500.00 in all. The record shows a mortgage, executed by appellee upon the property for the amount of $6500.00. He also swears that he turned over to Ford three notes, secured upon other property owned by him, one for $1000.00, one for $510.00, and one for $853.30, and that he paid Ford $27.15 in cash, thus making up, with the $6500.00 so raised by mortgage, the sum of $8890.45. All the facts and circumstances go to sustain the correctness and truthfulness of the testimony thus given by appellee. The only evidence, introduced by appellants to the contrary, consists of conversations, claimed to have been heard by appellants, or some of them, between appellee and Edward Smith Heaton, in which appellee is alleged to have admitted, that Heaton was his debtor, and that he held a mortgage upon the land, and did not claim the ownership of it. Certain entries, also, made in the books of Ford, who had died before the trial, are referred to as indicating that the relation of debtor and creditor existed between Heaton

and Ford, and between Heaton and appellee. This testimony is vague and unsatisfactory, besides being of questionable competency. While the declarations of a grantor with reference to his title may possibly be admissible against the grantee where such declarations are shown to have been made prior to his deed, yet the statements of the grantor after he has conveyed the land cannot be binding in any sense upon his grantee. (*Bentley* v. *O'Bryan*, 111 Ill. 53). Even, however, if these book entries were competent testimony, a careful examination of them, in connection with the rest of the evidence in the record, goes to show that Heaton's interest in the land had been foreclosed, and that the lands were sold by Ford, as owner, to the appellee, and that the appellee purchased them for himself.

In order to establish the fact, that a deed absolute upon its face is a mortgage, it must appear that a debt existed, due from the person, claimed to be mortgagor, to the person, claimed to be mortgagee. "It is an essential element of a mortgage that some obligation should exist to be secured." (*Rue* v. *Dole*, 107 Ill. 275; *Freer* v. *Lake*, 115 id. 662; *McNamara* v. *Culver*, 22 Kan. 661). The evidence in the present case does not show, that there was any indebtedness existing from Heaton to appellee, which it was the intention of the parties to secure by the deed of December 21, 1883.

Appellee swears that he made an arrangement with Heaton after his purchase of the land, by the terms of which Heaton was to remain upon the land as his tenant, and was to pay him, as rent for the farm, an amount equal to seven per cent upon the money he had invested in the land, and also the taxes. Appellee had been a merchant in the neighborhood where Heaton lived, and had sold him goods from time to time. He was a friend of Heaton and of his family. He sold out his store and retired from business, and went to Iowa to live in 1881, and lived there ever after that time. His books show

payments made from time to time, in the form of drafts sent to Iowa, by Heaton, but there is nothing to show that these amounts so paid were not for rents. The entries in these books do not show upon their face, as is claimed by appellants, that they were paid as interest upon an alleged indebtedness from Heaton to appellee, nor does the other proof show that they were paid as interest. Appellee was a friend of Heaton, and the latter often admitted that appellee was kind to him in permitting him to remain upon the land. He did remain upon the land until the time of his death in June, 1899.

The evidence tends strongly to show, that the relation, which existed between Heaton and appellee after the execution of the deed on December 21, 1883, was that of tenant and landlord, and not debtor and creditor.

On the 15th day of September, 1894, Heaton took out a policy of insurance upon the dwelling house, barn, sheds and other buildings upon these premises. In his application to the agent of the insurance company, Heaton stated that appellee was the owner of the farm, and that he was tenant. Heaton signed the application, or caused his wife to sign it for him, in the name of "Homer Gaines, applicant, by E. S. Heaton, agent." In the application thus signed, the following question is asked: "Are you the sole and undisputed owner of the property to be insured?" and is answered, "Yes." Therein also the following question is asked: "Are the buildings to be insured, or containing property to be insured, occupied by the applicant or tenant?" and was answered as follows, "Tenant."

At another time, Heaton was sued before a justice of the peace by a man, who had done some work for him upon the farm, and he defeated the suit by swearing that the farm was owned by appellee, and that he was acting merely as agent for appellee in his possession and operation of the farm. The evidence also shows, that appellee tried to sell the farm to different parties, and put it

into the hands of a real estate agent to sell for him, and advertised it for sale in the newspapers, all of which efforts to sell must, under the circumstances, have been known to Heaton, and he entered no protest against them, nor made any objection thereto. There is testimony, showing that Heaton always recognized appellee as the owner of the land in his conversations with his neighbors upon the subject.

It is true that, during the years while Heaton was in possession of the land from December, 1883, to the time of his death, he made certain improvements upon the premises, but, after a careful examination of the evidence, we are satisfied that these improvements were only such as a tenant in occupancy of premises would naturally make, in order to keep the premises in repair. (*Clark* v. *Clark*, 122 Ill. 388.) Appellee swears that one of the terms of the occupancy by Heaton was that he was to keep the premises in repair.

The decree of the circuit court seems to have been based upon the proposition of settlement made by appellee in his answer, and not upon a consideration of the merits of the case. The proposition, which was made by appellee in his answer, was that he would allow the widow of Heaton to have the premises, provided a sale of them could be made for enough to reimburse him what he had expended upon them and interest upon such amount. This offer of settlement, however, was based upon the condition that the transaction was to be closed on or before March 1, 1900; but it was not closed within the time limited. We concur with the following statement upon this subject, made by the Appellate Court in its opinion (p. 28): "The proposition made by Gaines was practically an offer to settle the suit and save the costs. He had a right to prescribe his own terms in making such an offer. The proposition was explicit that the transaction should be closed by March 1, 1900, but it was not until fifteen months after the expiration of the limitation

made that the offer was accepted by defendants in error, if indeed there was any acceptance. In the meantime the proofs had been taken, expenses had been incurred for solicitor's fees, and the cause had been determined by the master in favor of Gaines. The offer had expired by its own terms, and defendants in error had no right after that length of time to accept it. The court had no authority, at the time when the offer is claimed to have been accepted, to extend the time of compliance with it to November 1, 1901, neither did it have authority to allow interest at the rate of five per cent per annum as provided for in the decree, when the offer provided for the payment of interest at the rate of seven per cent per annum. In no event could Gaines have been properly held by the decree to be bound by terms other than those named in his offer.—*Carpenter* v. *Plagge,* 192 Ill. 82."

After a careful examination of the whole record we are satisfied that the judgment of the Appellate Court was correct. Accordingly, that judgment is affirmed.

*Judgment affirmed.*