BRIDGET GANNON

*v.*

FRED R. MOLES *et al.*

*Opinion filed April 20, 1904.*

1. MORTGAGES—*a deed is presumed to be an absolute conveyance.* A deed absolute on its face is presumed to be an absolute conveyance, and the burden is upon the party-claiming it to be a mortgage to overcome this presumption.

2. SAME—*indebtedness must be shown, to hold a deed to be a mortgage.* In order to hold a deed absolute on its face to be a mortgage it must appear that a debt to be secured was owing from the alleged mortgagor to the alleged mortgagee.

3. SAME—*what tends to show that deed was intended as a conveyance.* That the defeasance agreement, executed with the original deed which was intended as a mortgage, was assigned, for a valuable consideration and with the original grantor's consent, to the grantee in a second deed, by which the grantee assumed all of the indebtedness between the parties to the first deed, tends to show that the second deed was intended as an absolute conveyance.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. CHARLES A. BISHOP, Judge, presiding.

This is a bill, filed on January 4, 1902, in the circuit court of Kane county by the plaintiff in error against the defendants in error for the redemption of a farm of two hundred and twenty acres in that county. The defendant in error, Haish, one of the defendants below, filed no answer, and the bill was taken as confessed against him. The defendant in error, Moles, the other defendant below, filed an answer, denying the material allegations of the bill, and to his answer a replication was filed. The cause was heard in open court before the chancellor, and all the witnesses, who were examined upon the hearing, testified orally. The court below found that the defendant in error, Moles, did not hold the title to the farm as security, but was an absolute purchaser,

and had paid the full consideration, which was the fair cash value of the land; and dismissed the bill at complainant's costs.   Plaintiff in error, the complainant below, took an appeal to the Appellate Court, where the decree entered below was affirmed.   The case is brought here by writ of error for the purpose of reviewing the judgment of affirmance entered by the Appellate Court.

JONES & ROGERS, and J. E. MATTESON, for plaintiff in error.

D. B. SHERWOOD, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question, presented by the record, is largely a question of fact; and that question of fact is, whether, under the circumstances shown by the evidence, the farm, formerly owned by the plaintiff in error, was purchased by the defendant in error, Moles, or whether he held the title thereto as mortgagee merely, subject to redemption by plaintiff in error.

The material facts are substantially as follows:   On and before October 14, 1893, plaintiff in error was indebted in the sum of about $5830.68 to the defendant in error, Jacob Haish, of DeKalb county, and, in order to secure such indebtedness, conveyed to Haish her farm of two hundred and twenty acres in Kane county by an absolute deed of conveyance.   By the terms of the deed the grantor, Bridget Gannon, a widow, of the town of Virgil in Kane county, conveys, for the expressed consideration of $5830.68, to Jacob Haish of the city of De-Kalb in DeKalb county, the farm in question, which deed was recorded on November 7, 1893.   At the same time, to-wit, on October 14, 1893, articles of agreement were executed between Jacob Haish of the first part, and Bridget Gannon of the second part, wherein it was provided that, if the party of the second part should first

make payment and perform the covenants thereinafter mentioned on her part to be made and performed, said party of the first part covenanted and agreed to convey to the party of the second part in fee simple, subject to the same encumbrances as were then' on the land, the said farm by a good and sufficient warranty deed; and the party of the second part thereby covenanted and agreed to pay to the said party of the first part the sum of $5339.77 two years after date, with interest at seven per cent. This defeasance, or article of agreement, was signed by both Jacob Haish and Bridget Gannon under their seals.

The deed, so executed by plaintiff in error to the defendant in error, Haish, though absolute on its face, was a mortgage, when considered in connection with the written defeasance executed simultaneously with it. "The doctrine is well settled that a deed, absolute in terms, if intended to secure an indebtedness, is a mortgage whether the intention is manifested by a written defeasance, by parol declarations, or by the acts of the parties." (*Cassem* v. *Heustis*, 201 Ill. 208, and cases cited on p. 215). Indeed, it is not denied by either of the parties to this litigation that the deed and defeasance above described constituted a mortgage as between the plaintiff in error and defendant in error, Haish.

The evidence shows that Haish held one or more mortgages, or other evidences of indebtedness, against the plaintiff in error besides that represented by the deed and defeasance, as above set forth. About January, 1895, Haish began to press the plaintiff in error for the payment of her indebtedness to him, and the plaintiff in error applied to the defendant in error, Moles, who was her son-in-law, the husband of her daughter, Katie, to assist her in her pecuniary troubles. On January 11 and 12, 1895, meetings were held at the bank of Haish in DeKalb for the purpose of ascertaining the amount of the indebtedness of plaintiff in error to Haish, and for the purpose

of consummating the arrangement, which is claimed by Moles to have been a sale of the farm to him, and by plaintiff in error to have been merely a mortgage of the farm by her to Moles. At one or both of the meetings on January 11 and 12, there were present Haish and Mrs. Gannon, the plaintiff in error, and her two sons, Edward L. Gannon and William P. Gannon, and Moles, the defendant in error, and R. N. Botsford, who appeared to act as attorney for both Moles and Mrs. Gannon. The whole matter was settled and arranged in the manner herein stated on the afternoon of January 12, 1895, the parties differing in their testimony as to the precise hour in the afternoon when the business was concluded. At that time Haish, holding the title to the farm, with the consent of Mrs. Gannon, executed a deed of the farm to Moles. This deed bears date January 12, 1895, and is signed by Jacob Haish and his wife, and conveys to Fred R. Moles of Chicago, the farm in question, for an expressed consideration of $8661.58. The sum of $8661.58 was there ascertained to be the amount of the indebtedness, due from plaintiff in error to Haish, and this amount was agreed upon as such indebtedness by all the parties. The whole amount of the consideration named in the deed was not then paid by Moles to Haish; but Moles paid to Haish $2661.58 in cash, and executed to Haish a mortgage upon the farm of two hundred and twenty acres, so deeded to him by Haish, to secure a note for $6000.00, payable five years after date with interest payable annually at the rate of six per cent per annum. The payment of $2661.58, and the execution of the mortgage for $6000.00, settled the indebtedness of plaintiff in error to Haish.

On October 14, 1893, the day, on which the defeasance was executed by Haish and Mrs. Gannon, she by endorsement thereon assigned and transferred, for the expressed consideration of $1000.00, all her right, title and interest in and to said defeasance or contract to her two sons,

William P. Gannon and Edward L. Gannon. This writ-
ten assignment was signed by Mrs. Gannon. It is not
altogether clear from the evidence what the object of
this assignment to her sons was. She had another son,
named Tom Gannon, with whom she had had some litiga-
tion, and Tom Gannon held against her a judgment for
$1000.00, upon which he subsequently filed against her a
creditor's bill. Whether at that time she actually owed
her sons, William and Edward, a debt, for the security of
which she transferred her contract with Haish to them,
or whether the assignment to them was made for the pur-
pose of preventing the enforcement of the judgment of her
son, Tom, against the property, is not altogether clear.

On January 11, 1895, William and Edward Gannon,
by a written instrument, executed under their hands and
seals, for an expressed consideration of $3000.00, sold, as-
signed and transferred unto Fred R. Moles all their right,
title and interest in and to said contract, therein desig-
nated "the within contract," with full power and author-
ity to Moles to exercise all rights and privileges therein
granted to them. On January 11 and 12, 1895, Molés paid
to Edward and William Gannon in cash, $338.42. At the
same time he executed his three notes, one for $1000.00
payable on or before October 14, 1895, to the order of
Edward Gannon, with interest at six per cent; one for
$1000.00 payable one year after date to the order of Wil-
liam P. and Edward Gannon, with interest at six per
cent; and another for $1000.00 payable on or before Octo-
ber 14, 1895, to the order of William Gannon, with interest
at six per cent. The sum of $8661.58, paid by Moles to
Haish in cash and by mortgage as above stated, and the
check for $338.42 paid to Edward and William Gannon,
and the three notes, each for $1000.00 payable, one to
the order of Edward and William Gannon both, and one
to the order of Edward Gannon alone, and the other to
the order of William Gannon alone, made altogether the
sum of $12,000.00.

Defendant in error, Moles, claims that he bought the farm from his mother-in-law, Mrs. Gannon, for $12,000.00, and paid for it by discharging her indebtedness to Haish, and by paying to her sons $3338.42 in the check and notes above mentioned. The plaintiff in error claims that Moles paid off for her her indebtedness to Haish, and made an additional loan to her of the balance of the money advanced by him, and that the deed made to Moles by Haish was merely intended to be a security for the $12,000.00, so claimed by her to have been advanced by Moles for her.

On January 12, 1898, Moles paid the note and mortgage for $6000.00, held by Haish, and a release of the mortgage was on that day executed to him by Haish. When the three notes of $1000.00 each were executed by Moles on January 11 and 12, 1895, they were not at once delivered either to Mrs. Gannon, or to her sons, William and Edward, or either of them, but they were retained by Botsford until the judgment held by Tom Gannon against his mother should be paid or settled. The understanding among all parties was, that these notes should be held by Botsford, and that, out of the money to be realized upon them, the judgment of Tom Gannon should be paid, and when it was so paid then the notes were to be delivered up either to Mrs. Gannon, or her sons, Edward and William. About December 23, 1895, the attorney of Tom Gannon, and Botsford, and Moles held a meeting at Geneva, and, there, a settlement was made with Tom Gannon, and he accepted $500.00 in payment of his judgment. This sum of $500.00 was taken out of one of the notes, which had been executed by Moles, and which was then due. At that time, or before that time, written instructions had been given to Botsford by Edward and William Gannon that, upon the settlement of the judgment, the notes should be given up by Botsford to Mrs. Gannon. On December 23, 1895, Moles paid the $3000.00, $500.00 to discharge the Tom Gannon judgment, and

$2500.00 to Mrs. Gannon. Of the $2500.00 thus obtained by Mrs. Gannon, she retained $500.00, and placed the remaining $2000.00 in the hands of a lawyer to invest, or lend out, for her.

Upon the foregoing state of facts, the question arises whether the relation between Moles and plaintiff in error was that of mortgagee and mortgagor, or vendor and vendee. The Appellate Court in its opinion makes an elaborate review of all the evidence, and concludes that the transaction amounted to a sale of the farm to Moles, and not a mortgage of the same. There is great conflict in the evidence. As to the oral testimony, the evidence of Botsford and Moles sustains the view of the latter, that the transaction was a sale, while the testimony of Mrs. Gannon and her two sons, William and Edward, tends to sustain the opposite theory, that the transaction was merely a mortgage. We shall not attempt to analyze all the testimony upon this subject, nor to pass upon the credibility of the witnesses, who contradict each other.

The testimony was given orally in open court before the chancellor. He saw the witnesses, and could better judge of their credibility than we can from the record. "When the trial court has had an opportunity of seeing the witnesses, and of hearing their testimony as it is delivered orally, the findings of such court upon mere questions of fact, when the testimony is conflicting, will not, ordinarily, be disturbed on appeal, unless such findings are clearly and manifestly against the preponderance of the evidence." (*Burgett* v. *Osborne,* 172 Ill. 227; *Schoonmaker* v. *Plummer,* 139 id. 612; *VanVleet* v. *DeWitt,* 200 id. 153). After a careful examination of the testimony, we are of the opinion that the chancellor below, and the Appellate Court, have reached the correct conclusion. We will only refer to some of the written evidence, which shows the transaction to have been a sale of the farm by Mrs. Gannon to her son-in-law.

The law presumes, in the absence of proof to the contrary, that a deed is what it purports to be, that is to say, an absolute conveyance; and the burden of proof is upon the party, claiming such an absolute deed to be a mortgage, to sustain his claim by evidence sufficient to overcome this presumption of the law. (*Heaton* v. *Gaines*, 198 Ill. 479). To show that a deed absolute on its face is a mortgage, the evidence must be clear, and satisfactory, and convincing. (*Helm* v. *Boyd*, 124 Ill. 370; *May* v. *May*, 158 id. 209). We have said that "without an ownership in lands there can be no mortgage of them." (*Heaton* v. *Gaines*, *supra*, and cases there cited). We have also said that, in order to establish the fact that a deed absolute on its face is a mortgage, it must appear that a debt existed from the mortgagor to the alleged mortgagee. (*Rue* v. *Dole*, 107 Ill. 275; *Freer* v. *Lake*, 115 id. 662; *Heaton* v. *Gaines*, *supra; Burgett* v. *Osborne*, *supra*). In the case at bar, there is no evidence that any indebtedness existed from Mrs. Gannon to Moles. It is claimed, on the part of the plaintiff in error, that when, Haish, who held the title to the farm, executed a deed to Moles, Moles merely became thereby an assignee of the mortgage security held by Haish. (*DeClerq* v. *Jackson*, 103 Ill. 658). It is true that, under ordinary circumstances and when there is nothing to show to the contrary, a grantee of one who holds under a deed on its face absolute, but in legal effect a mortgage, occupies the position of an assignee of a mortgage. But, in the present case, there is nothing to show that such was the position, occupied by Moles, when he received the deed from Haish. Immediately upon the execution of the deed to him, and as soon as the title was thereby vested in him, he executed a mortgage to Haish upon the property for $6000.00, thereby treating himself as the owner of the property. No deed was executed to Moles by Mrs. Gannon. The execution of the mortgage for $6000.00 by Moles to Haish was made with Mrs. Gannon's knowledge and consent. On January

4, 1895, Moles wrote a letter to Mrs. Gannon, enclosing to her the copy of a letter, which he had written to Haish, and which he afterwards sent to Haish, and in that letter the borrowing of $6000.00 upon the property by a proposed purchaser is referred to. Whether Mrs. Gannon was really indebted to her sons, Edward and William, in any amount or not, it is certainly true that all of the $12,000.00 paid by Moles over and above what was necessary to pay off the indebtedness to Haish, went to Mrs. Gannon, except $338.42, which was paid to her two sons. Of the remaining $3000.00, she received $2500.00 in cash, and $500.00 was expended to pay the judgment against her held by her son, Tom. There is nothing in the evidence, or in any of the circumstances developed by the proof, to show that what was paid by Moles over and above the indebtedness to Haish was a loan, and not purchase money. Indeed, all the circumstances point to the conclusion that it was purchase money, and not a loan.

On January 3, 1895, after Mrs. Gannon had called upon Moles in Chicago and asked him to buy the farm, she wrote a letter to her daughter, Katie, the wife of Moles, in which she says: "Dear Katie—I received your letter. Fred [that is, Moles] can take it at $12,000.00, and our blessing, and I want him to take it at once as I would be crazy before a month." Other letters and other testimony show that the reference in this letter is to a purchase of the farm by Moles at $12,000.00. When plaintiff in error said "Fred can take it at $12,000.00 * * * and I want him to take it at once," she refers to his taking the farm at $12,000.00. In reply to this letter, thus written by Mrs. Gannon on January 3, Moles wrote to her on January 4 as follows: "Yours of last night at hand and contents noted. Find enclosed copy of the letter I have sent to Haish. You can show it to the boys, and tell them what arrangements you made with me, because, if they are not satisfied, I don't want to take the farm, and in fact it is only an accommodation to you that I go into

it. I will go and see Ranstad and Botsfield when I am at Elgin Monday; then I will know how to talk to those at Elgin. * * * You could have the boys tell Mr. Haish that you have a purchaser for the place, but don't say what the price is, or who it is. He might decide to pay you more than what I have offered you." In the copy of the letter, written to Haish, which Moles enclosed in his letter to Mrs. Gannon he tells Haish that he can get a purchaser for the farm, who wants five years' time on $6000.00 at six per cent, and asks him if he can make such a loan; and he then says: "If you would favor me with an itemized statement of your claims against the farm, so that I can explain them to Mrs. Gannon, I think we can close this deal immediately with a satisfactory settlement. I don't fully understand what condition her affairs are in with you, as I understand you have the deed of the farm, and she has a contract of return sale within two years at a certain sum; if such is right, the purchaser I have will settle with her, and you can convey the property to the purchaser on the terms as before stated." On January 7, 1895, Mrs. Gannon answered this letter of January 4 by a letter to her daughter, in which she says: "Dear Katie—I received your letter. * * * Katie, for God's sake, let ye not let your mother and father's grand home go to the stranger. * * * So don't think but you are making money by buying that farm, that has everything on it, nothing wanted on it, good fences, and the buildings are the best in the township," etc. These letters all show that the parties had in view a sale of the farm by Mrs. Gannon to Moles, and not a transfer from Haish to him as mortgagee. She was unable to pay her indebtedness to Haish, and he was threatening the foreclosure of a mortgage that he held upon the property. Her attorney, Mr. Botsford, had advised her to sell the farm, in order to get as much out of her equity of redemption as possible, before any foreclosure proceedings should be commenced.

The two sons of Mrs. Gannon, William and Edward, were unable to be present at the meeting in December, 1895, where the Tom Gannon judgment was settled, and the notes against Moles were turned over to Mrs. Gannon, and paid to her. Edward L. Gannon on December 17, 1895, in view of the impossibility of his being present at that meeting, wrote the following letter to Mr. Botsford: "Being in a position where I am not certain of a leave of absence being granted me, I give my mother, Mrs. B. Gannon, full power to act for me in all matters pertaining to late sale of the farm, and also the disposition of all notes held by you." Edward Gannon, who was present on January 11 and 12 when the transaction took place, by which the indebtedness to Haish was settled and the title to the farm was transferred to Moles, speaks of it in this letter of December 17, 1895, as the "late sale of the farm." It is singular that he should thus speak of it as a sale, if it was understood at the time by his mother and his brother and himself that it was merely a transfer of the rights of Haish as mortgagee to Moles, and that Moles held the property as mortgagee, subject to redemption by Mrs. Gannon. When Mrs. Gannon said in her letter on January 7, 1895, to her daughter, "you are making money by buying that farm," she could have referred to nothing else than an offer by Moles to buy the farm. Indeed, she was urging her daughter and the husband of the latter to buy the farm. All this is inconsistent with the idea of a mortgage.

If the intention was that Moles should buy the indebtedness, which Haish held against Mrs. Gannon, and hold it subject to her right of redemption, it is singular that he should have paid to Mrs. Gannon, or to her sons for her, $3338.42 over and above the indebtedness due to Haish. We find nothing in the evidence to satisfy us that this latter amount constituted a loan.

One of the strongest circumstances to show that the transaction was a sale, and not a loan, was the fact that

the defeasance agreement was on January 11, 1895, assigned by William and Edward Gannon to Moles, and taken up and held by him. By the terms of that defeasance, as originally executed, Haish was to make a conveyance to Mrs. Gannon upon her paying to him a certain amount of indebtedness. If the deed of Haish to Moles was merely an assignment of the mortgage to Moles, then it would appear that an agreement of defeasance should have been executed between Mrs. Gannon and Moles, or at least the old agreement of defeasance should have been held by Mrs. Gannon or her son. Instead of this, however, the defeasance agreement is assigned and surrendered to Moles, the grantee in the deed from Haish of the property in question. Having the title to the farm by a deed from Haish, Moles is also allowed to keep the only written evidence in existence, that the transaction between Haish and Mrs. Gannon was a security. There is some evidence, tending to show that some paper was executed on the afternoon of July 12 after Mr. Botsford had left the room where the settlement was made, which paper was said to embody an agreement on the part of Moles to allow a re-purchase of the property by Mrs. Gannon. In regard to this matter, however, she and her son Edward are contradicted by their letters, as well as by the testimony of Botsford and Moles. We are unable to say, therefore, that the testimony preponderates in favor of the theory, contended for by the plaintiff in error and her counsel. If it was the intention that there should remain in her the right of redemption, it is singular that her counsel, who was there advising her, should not have compelled Moles to put in writing some evidence of the rights of Mrs. Gannon in this regard. So, also, there is nothing to show that any evidence was retained of the amount of the indebtedness, which is alleged to have existed between Mrs. Gannon and Moles after the settlement on January 12, 1895. If he was making a loan to her, and not buying the farm, he would certainly,

as a prudent man, have taken from her some evidence of her indebtedness to him. No such evidence, however, was then retained or is now produced.

We concur in the following views expressed by the Appellate Court in their opinion deciding this case: "It is also worthy of notice that, while the bill alleges it was agreed between complainant and defendant, that the deed from Haish to defendant was for the purpose of vesting title in him to hold as security for the money he had advanced, it is nowhere stated that such agreement was in writing, nor is any such paper, as the Gannons testified to, mentioned or referred to in the bill. The decree finds, and we think not unwarrantedly, that the $12,000.00, paid by Moles, was the fair value of the land at that time, and, in view of all the evidence, we are unable to say that the court erred in dismissing complainant's bill. It is insisted, as a matter of law, that, as Haish's title was that of a mortgagee, Moles necessarily took title as a mortgagee also. We do not think this correct. If all the parties interested agreed that Moles should become the absolute owner of the land, and if the deed from Haish and the assignment to him of the agreement from Haish to re-convey, were intended to vest in him the legal and equitable title, we think what was done had that effect. Complainant and her sons, the only persons besides Haish having any interest in the land, requested and procured the deed to be made to Moles, he paying the full consideration thereof, and her two sons, also with her knowledge and consent, assigned and transferred to Moles the agreement from Haish to re-convey, thus vesting in him absolute title, and, having done this, she cannot now be heard to repudiate it."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*