**In re A. ROTH CO., Inc.**

**ROTH v. CHATZ.**

No. 7364.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1941.

Michael Gesas and Louis Cohen, both of Chicago, Ill., for appellant.

Thos. Lindskog and Harold S. Lansing, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

The question presented is whether a quitclaim deed conveyed the fee in the real estate involved, or merely a lien upon it. The deed was executed by the sole stockholder of a corporation, subsequently bankrupt, to a nominee for a creditors' committee, as collateral for carrying out the

provisions of an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The District Court held that the grantor conveyed the fee in the property, and ordered the trustee in bankruptcy to sell it free of all liens, except those of taxes to which, in his discretion, it might remain subject. From that order the grantor appeals.

Roth, appellant here, was the sole stockholder of A. Roth Company, Inc., now bankrupt. In January, 1939, that company filed its petition for approval of an arrangement under Chapter XI. Under the terms of the arrangement, creditors holding claims amounting to less than $200 were to be paid in full while all holding claims over that amount were to receive the promissory notes of the company maturing July 1, 1939. These notes were to be secured by the terms and provisions of a certain agreement to be entered into between the debtor, a creditors' committee, and Roth. The committee was to have the right to direct liquidation of the debtor upon default in payment of the notes. Roth was to deposit, as collateral to the agreement, a quitclaim deed for his interest in the real estate upon which the business of the debtor was carried on, and this interest was to be sold in the event that all the notes issued under the arrangement and all the indebtedness incurred in the operation of the business subsequent to the arrangement and pursuant to its terms, were not paid in full. The arrangement was duly approved by the court, and pursuant to its terms, an agreement entered into between the committee, the debtor and Roth.

The agreement, approved by the referee in March, 1939, recited that Roth, as an inducement to the creditors of the corporation, was willing to deposit with the committee certain property as collateral, and that it was to remain in effect until all the indebtedness covered by it had been paid in full, or until the liquidation of the corporation. It further provided:

"6. Roth has heretofore deposited with the committee as collateral * * * a statutory Quit-claim deed * * * conveying to Harry L. Oppenheimer, as Trustee, * * * (the nominee of the committee) Roth's right, title and interest in * * * being the present manufacturing plant * * * of the corporation, which said quit-claim deed the said committee has caused to be recorded * * * and which said interest in said real estate shall be held and disposed of pursuant to the provisions of this agreement."

"9. In the event the corporation is in default in the performance of any of the covenants * * *

"(4) In the event the net proceeds of the liquidation as hereinbefore provided shall not be sufficient to fully pay * * * the committee shall be and is hereby authorized * * * to sell at either public or private sale or public auction the real estate * * * held in trust * * * and any purchaser thereof shall not be obliged to inquire as to the necessity or expediency of any act * * * or the application of the purchase money. Provided, however, that in the event the corporation shall fully pay and discharge all of the indebtedness * * * or * * * proceeds of the liquidation * * * shall be sufficient to fully pay * * * then * * * committee shall cause its nominee to reconvey to Roth the said real estate, subject however, to all unpaid taxes, liens * * * and thereupon all interest of the committee in and to said real estate shall cease and terminate."

At some time after the execution of this agreement, it appears that the arrangement failed, for reasons not disclosed of record; the company was adjudicated a bankrupt; and Oppenheimer was ordered by the court to convey the Roth real estate to the receiver in bankruptcy who was subsequently appointed trustee. In December, 1939, Roth petitioned for an order reconveying the property then held by the trustee to him, on the ground that the quitclaim deed made by him to Oppenheimer was obtained by fraud and coercion. The referee found no such fraud or coercion. Another petition was filed, by the holder of a junior mortgage on the real estate, asking leave to foreclose her mortgage in a state court. The referee granted this leave, and authorized the trustee to defend the foreclosure, but denied a third petition, for leave to intervene, filed by a judgment creditor of Roth who had obtained his judgment after the quitclaim deed from Roth to Oppenheimer. Upon petitions to review filed by various parties to the bankruptcy proceeding, the referee certified the following question to the court:

"Where a bankrupt corporation has never had title to, nor been in possession of real estate except as a tenant; and where the title, prior to bankruptcy, was trans-

ferred to a trustee for creditors as security for the performance of an arrangement entered into by the bankrupt; and where the title of said trustee has been conveyed to the trustee in bankruptcy, is the Bankruptcy Court authorized to sell said real estate free and clear of all liens, said liens including a first and second mortgage and lien of judgments against the owner of said real estate?"

In certifying this question, the referee recommended a proceeding in a state court to take care of all rights and interests in the real estate, rather than a sale by the bankruptcy court free and clear of liens. He stated that while it was clear that the record title appeared to be in the trustee, it was conceded by everybody in interest that the title to the real estate was in Roth, subject to taxes of approximately $7,000; two mortgages (the first claimed to be merged with the legal title); the rights under the deed to the trustee, which it was conceded was given to secure the performance of the arrangement, the trustee therefore occupying the position either of a mortgagee or of a trustee under a trust deed; and judgment liens of at least one judgment creditor and possibly others based upon judgments against Roth. Under these circumstances the referee was of the opinion that even if the bankruptcy court had jurisdiction, it should not assume it since that would involve the necessity of administering the affairs of Roth wholly disconnected with those of the bankrupt.

The court upon these facts found that when the quitclaim deed was executed and delivered to the nominee of the creditors' committee, it was contemplated that the latter would hold and deal with the property as the absolute owner of it, for the benefit of the creditors, subject to the terms of the arrangement and agreement, and the directions of the court; that Roth was not personally liable for the debts of the bankrupt, and the deed constituted a voluntary conveyance for the purpose of creating an additional source for payment of the bankrupt's debts, and the consideration for the conveyance was the written acceptance by a majority of the creditors of the arrangement; that the deed was not intended to operate as a mortgage and was not in fact a mortgage, but vested in Oppenheimer the fee simple title to the real estate, subject only to such liens as existed at the time of its delivery and to the terms of the agreement; that the trustee in bankruptcy held the fee simple title to be administered for the benefit of creditors of the bankrupt entitled to such benefits by virtue of the arrangement and agreement; that there had been a default by the corporation, whereby Oppenheimer became entitled to dispose of the real estate for the benefit of the creditors, and when he conveyed it to the trustee, that officer was entitled to sell it in the bankruptcy court, administering the proceeds the same as any real estate of which a trustee in bankruptcy has title; and that the bankruptcy court was the proper tribunal to determine the validity of all liens against the real estate, marshall them, and provide for the enforcement and liquidation thereof against the proceeds of a sale free and clear of liens.

We cannot agree with the District Court's analysis of the transactions here involved. The original arrangement and agreement clearly recited that the quitclaim deed was given as collateral, and that if the other assets of the corporation proved to be sufficient to pay its debts, Oppenheimer should reconvey the real estate to Roth. The referee stated that it was conceded before him that the trustee occupied the position of a mortgagee or a trustee under a trust deed. While there was no actual defeasance clause contained in the deed or agreement, there was a specific provision for reconveyance, and we understand that this satisfies the requirement. As stated in Jones on Mortgages, 8th Ed., vol. 1, § 291, "Any stipulation or agreement that plainly indicates an intention to return or reconvey the property, upon payment of the sum named, constitutes a mortgage. If there be in the deed itself, or in any separate deed executed at the same time, and constituting with the conveyance, one transaction, a provision that the estate shall be reconveyed upon the payment of the debt, such stipulation constitutes a defeasance as much as if the words 'on condition,' or 'provided, however,' were used." Citing Whitcomb v. Sutherland, 18 Ill. 578. It is further stated, in § 301, "When it is once established that the separate instrument is a defeasance, the conveyance assumes the character of a mortgage with the inseparable incident of redemption, which no agreement of the parties, that the estate shall be absolute if the money be not paid at the day fixed, can waive. * * * for the parties can not thus avoid the necessity of a foreclosure or restrict or defeat the debtor's right of redemption." Citing Jack-

son v. Lynch, 129 Ill. 72, 21 N.E. 580, 22 N.E. 246.

■ Appellee contends, however, that there can be no mortgage here for the reason that there was no debt owing from Roth to the creditors of the bankrupt. He cites two Illinois cases in support of this proposition, Rue v. Dole, 107 Ill. 275, and Heaton v. Gaines, 198 Ill. 479, 64 N.E. 1081. The first, however, involved the construction of a deed, absolute on its face, accompanied by the cancellation of indebtedness formerly secured by mortgage on the real estate, and with a new purchase contract made contemporaneously with the deed and cancellation of the indebtedness. The second involved property purchased at a foreclosure sale and later sold to a third party who gave the original mortgagor (whose rights had been wholly extinguished by the foreclosure and expiration of the redemption period) a contract to purchase which the court held did not revive or create any rights in the original mortgagor to redeem the property. These, of course, are wholly different situations from the one at bar. Here, a debt undoubtedly existed at the time of the conveyance, and continued to exist thereafter. It is true that Roth was not liable for the payment of that indebtedness. However, he chose to make his property liable for it, with the proviso that if the debt were paid off from other sources, the property should be reconveyed to him. The deed, while absolute on its face, was accompanied by an agreement which clearly showed its collateral nature. Moreover, it seems clear to us that the transfer could be considered absolute, barring Roth's right of redemption, only if the arrangement his deed was deposited as collateral to secure was in fact carried out. This, the record discloses, was not done. We are convinced that the conveyance must be construed as a mortgage, with all the incidents which attach to such an instrument. That there may be a mortgage without personal liability on the part of the mortgagor for the debt which the mortgage secures, see Jones on Mortgages, vol. 1, § 436. We find no Illinois cases opposed to this rule.

■ Appellee further contends that Roth, by his voluntary conveyance of his real estate to Oppenheimer pursuant to an arrangement under the Bankruptcy Act, conferred jurisdiction upon the bankruptcy court to administer that property. He relies upon § 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, which provides that the trustee shall be vested by operation of law with the bankrupt's title as of the date of the filing of the petition in bankruptcy or of the original petition proposing an arrangement or plan. Appellee in thus relying upon § 70 loses sight of the fact that the section relates to title to property of the *bankrupt* as of those dates. We do not understand that it confers jurisdiction over property, in effect, loaned for the use of the bankrupt, in an attempt to clear up its financial structure without resort to adjudication in bankruptcy. While the property here was conveyed to a nominee for creditors, it was by defeasible title. We do not understand that the transaction ever vested title in the bankrupt itself, nor do we understand that the Act contemplates administration by the bankruptcy court of property encumbered by liens arising out of claims of parties having no relation whatever to the bankrupt, and which had arisen sometime prior to the conveyance to it. Obviously the court has jurisdiction to administer a bankrupt's property, closing out any equity of redemption the law affords to mortgaging debtors, and which the bankrupt might thus have. That equity of redemption is a property right over which the court obviously has jurisdiction along with all property of the bankrupt. This is not true where the equity of redemption resides in a person other than the bankrupt. nor is it clear to us how the owner, by his conveyance to the trustee, could swing into the orbit of the bankruptcy court, jurisdiction over the claims of his own creditors against the property which had arisen prior to the conveyance. This, it seems to us, would be the effect of the order here. However, this question is not presented by this appeal. As to the inability of the bankruptcy court to sell property subject to adverse claims free and clear of those claims, see Petition of Eddy, 1 Cir., 6 F.2d 196.

We conclude that, inasmuch as the deed of Roth conveyed a mortgage interest rather than the fee simple title, the bankruptcy court is without power to sell the property free and clear of liens. The decree of the District Court is therefore reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.