EDWIN W. MERRICK, as Exr. of ESTATE OF PAULINE M. EVANS, Deceased, *et al.*, Plaintiffs, Counter-Defendants and Appellees, *v.* FLORENCE DAEHLER, Defendant, Counter-Plaintiff and Appellant.

(No. 71-223;

Second District—April 25, 1972.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, (William C. Murphy, of counsel,) for appellant.

Gunner, Keller & Magdich, of Dixon, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal questions whether the grantee in a deed given as security in the nature of a mortgage has effected a change in prior title by a conveyance after repayment of the debt.

Edwin W. Merrick, as executor of the Last Will and Testament of Pauline M. Evans, Deceased, and Elizabeth Bales, a residuary beneficiary under the will, sued to eject the defendant from the premises on which she resided, and to quiet title in the Estate. The defendant Florence Daehler counterclaimed, asking that the deed divesting her of any interest in the property be declared a mortgage release. She also claimed homestead, and sought reformation of the later divesting deed.

The property was acquired in 1951 by Ray Evans and Pauline Evans, his wife, in joint tenancy. In 1954 Pauline Evans conveyed her interest to her son Robert Daehler. In April of 1958 Ray Evans was divorced and conveyed his interest to Pauline Evans and Robert Daehler as joint tenants. Florence Daehler married Robert in September of 1958. In October of 1958, Pauline Evans (then owner of one-half interest in the property jointly with Robert Daehler), and Robert Daehler (then owner of the one-half interest in the property as a tenant in common with the joint interest in the remaining half), executed a deed to Dement Schuler.

It is undisputed that the deed to Schuler, although absolute in form, was taken as security for the construction of a home on a portion of the premises. Because of difficulties between Florence Daehler and Pauline, the new house was to be built for Mrs. Evans to live in, with Florence to live in the original home. Simultaneously, the parties entered into a printed form contract titled "Articles of Agreement for Warranty Deed Installment Contract" with Schuler. In this agreement Schuler and his wife were designated as "seller" and "Pauline Evans, Robert O. Daehler, and Florence Daehler, wife of Robert O. Daehler" were designated as "purchaser". The contract provided for the payment of $2,400, plus interest, in monthly installments. It also contained the following typed provision:

"In case of the death of Pauline Evans or Robert O. Daehler, prior to the delivery of the deed, the survivor may complete the payment and shall be entitled to a deed. If both purchasers are living when

payments are completed, deed shall be made to both as joint tenants and not as tenants in common."

The printed portion of the agreement included the usual provision that, "If there be more than one person designated herein as 'Seller' or as 'Purchaser' said word or words * * * although expressed in the singular shall be read and construed as plural."

The contract was fully paid on March 8, 1960. Schuler and his wife then executed a deed to Pauline Evans and Robert O. Daehler, as joint tenants, purporting to comply with their understanding of the contract.

Robert Daehler died in 1969. Pauline Evans died in 1970. Florence Daehler was not mentioned in the will.

The court found, in a memorandum opinion, that the original conveyance was a "security transaction in the nature of a mortgage" for redemption purposes, but that it differed from a common law mortgage and, in fact, conveyed a title which the grantee could reconvey as agreed upon by the parties as distinguished from a release. He held that the deed conformed to the agreement and the intent of the parties, construing "both purchasers" as referring to only Pauline Evans and Robert Daehler. The court decreed that title be quieted in the plaintiffs and that they have possession.

In this appeal, Florence Daehler argues that a security transaction gives the mortgagee no title, but only a right to release the security. Therefore, she claims that she is entitled to the undivided one-half interest as tenant in common of the premises which her husband had prior to the conveyance to Schuler. Alternatively, she argues that a proper construction of the reconveyance to "both" purchasers as joint tenants; and that a proper interpretation of the agreement would show that Florence Daehler was included as a purchaser, concluding that the reconveyance deed should be reformed because of the mistake.

In arguing first that the Schulers could convey no title as they purported to do by the reconveyance deed dated March 8, 1960, but could only release the mortgage, Florence Daehler cites the provisions of Ill. Rev. Stat. 1959, ch. 95, par. 13,

"Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." [1]

---

[1] This section was repealed effective July 1, 1962. Plaintiffs have called our attention to Ill. Rev. Stat. 1969, ch. 95, par. 23.1 defining,

"The term 'mortgage' means and includes every mortgage or trust deed in the nature of a mortgage upon real estate."

Plaintiffs have argued that the repeal of Sec. 13 in the Conveyancing Act and the inclusion of the definition in Sec. 23.1 of the Illinois Mortgage and Foreclosure Act was an attempt to bring the wording in agreement with the decisions and to restrict the term mortgage to the purposes of the Mortgage and Foreclosure Act.

Florence Daehler argues that the statute cannot be restricted by making a distinction between common law mortgages and equitable mortgages. (*DeVoigne v. Chicago Title & Tr. Co.* (1922), 304 Ill. 177, 182, 183; Osborne on Mortgages, Sec. 77, page 87.) Based upon this conclusion, she further cites cases holding that a conveyance by a mortgagee cannot effect the previous status of title (*Willhite v. Berry* (1908), 232 Ill. 331, 334; *Lightcap v. Bradley* (1900), 186 Ill. 510, 522-523; and cases which stand for the proposition that a mortgagee has only a lien (*e.g., Kling v. Ghilarducci* (1954), 3 Ill.2d 454, 460; *Central Republic Trust Co. v. Petersen Furniture Co.,* (1935), 279 Ill.App. 492, 495.)

The counter-defendants rely principally upon *Williams v. Williams* (1915), 270 Ill. 552, and *Gannon v. Moles* (1904), 209 Ill. 180, as illustrating that a deed given as security has been distinguished from an ordinary mortgage so as to permit reconveyance as directed by the parties.

Under the circumstances of this case, we conclude that the conveyance from the Schulers was ineffectual to change the status of title as it existed prior to the security transaction. The deed back only effected a release of the lien. *Willhite v. Berry,* 232 Ill. 331, *supra; Lightcap v. Bradley,* 186 Ill. 510, *supra.*

*Williams v. Williams,* 270 Ill. 552, *supra,* does not impel a contrary conclusion. In that case Williams conveyed to a loan association and simultaneously was given a bond for deed providing for reconveyance to him upon payment of the loan. He assigned and delivered the bond to his wife. After his death, the children of Williams, filed a partition suit on the theory that the assignment was ineffectual. The court held, on the widow's counterclaim, that Williams had an equitable interest which was transferred and that no equitable grounds in favor of the children and against the widow were proved to justify setting aside the assignment, which was fully in accord with Williams' intentions.

■■ In *Williams,* the assignment of the equitable mortgagor's interest was a subsequent and separate transaction, distinct from the very transaction which created the equitable mortgage. We do not consider that counter-plaintiff is necessarily correct when she says that this in itself distinguishes the cases, however. There is no question that an equitable estate may be assigned and that circumstances may make it inequitable for chancery to interfere and set aside the assignment. (*Williams v. Williams, supra,* at page 557.) Thus in *Williams,* the court refused to set aside the assignment when there were no equitable grounds to do so, since the children admitted that their father's intent was to transfer his entire interest to his wife and they relied only upon the technical

form of the assignment. *Gannon v. Moles,* 209 Ill. 180, *supra,* involves similar considerations.

In *West v. Reed* (1870), 55 Ill. 242, 247-8, relied upon in *Williams,* there is a suggestion that equity will not permit a mortgagee to defeat the right of redemption by the agreement into which the mortgagor may be induced to enter in order to effect the loan, but the court notes that the principle "does not preclude any subsequent *bona fide* agreement between the parties." The court held that under the equities the subsequent agreement canceled the right of reconveyance with no equities in the equitable mortgagor worthy of protection.

While all of those cases cited involve an agreement after the security transaction has been entered into, this distinction has not been made and we cannot conclude from the cases that equitable interests, at least between equitable mortgagors themselves, may not be assigned in the same instrument which creates the equitable lien.

■■ However, while equity may protect an unquestioned intended assignment of equitable interests, the cases also stand for the proposition that the assignment must be clearly intended and based upon equitable considerations. We perceive that these factors distinguish this case from such cases as *Williams, supra, West v. Reed, supra,* and *Gannon, supra.*

■■ The agreement by which these transactions were conducted designates "Pauline Evans, Robert O. Daehler, and Florence Daehler, wife of Robert O. Daehler" as purchaser, but later provides that "(i)f both purchasers are living, when payments are completed, deed shall be made to both as joint tenants." This latter provision immediately follows a sentence referring to the contingency of the death of Pauline Evans or Robert Daehler. We are unable to say with any certainty either that Robert Daehler intended to assign any part of his interest to Pauline Evans to the exclusion of his wife, or that, in signing the reconveyance agreement, Florence Daehler intended to divest herself of all interest in the property.

■■ In addition, the equities favor Florence Daehler. The evidence showed that she helped support Pauline Evans after the latter's husband died (with testimony that she worked between 1958-1969 and thereafter, while Pauline Evans was unemployed and had no income except social security); that she paid some $11,700 in improvements on the property from funds given to her by her father; and that she paid taxes. As the widow of Robert Daehler, she received nothing in the way of consideration for the supposed transfer of her interest in the property, and, in fact, undertook a joint and several obligation to pay back $2,400.

274

■■ While we have not found a basis for reformation on the grounds of mistake as alternatively requested by the counter-plaintiff, we conclude that the trial court was in error in holding that Florence Daehler had no interest in the property. The purported reconveyance by the Schulers, in our view, is effective only as a release of the security interest and has no bearing upon the title. Title remains as it was prior to the security transaction: an undivided one-half interest in Florence Daehler as the successor to Robert Daehler, now deceased, in common with the remaining one-half interest which is in the Estate of Pauline Evans, Deceased (she having succeeded to the joint interest of Robert Daehler in that half).

We, therefore, reverse.

Judgment reversed.

T. MORAN and GUILD, JJ., concur.