## Magdelena Belinski v. The National Brewing Company, et al.

### Gen. No. 12,147.

1. CONSTRUCTIVE MORTGAGE—*burden of proof to establish.* The burden of proof that an absolute deed was intended as a constructive mortgage is upon the party seeking to establish it.

2. CONSTRUCTIVE MORTGAGE—*how to be determined.* Whether a deed absolute in form is a mortgage, is a question of intention to be ascertained from all the circumstances in evidence, which circumstances may be shown by parol.

Bill to redeem.   Error to the Superior Court of Cook County; the
Hon. Theodore Brentano, Judge, presiding.   Heard in this court
at the March term, 1905.   Affirmed.   Opinion filed December 14,
1905.   .

**Statement by the Court.**   Plaintiff in error has sued out
this writ of error to reverse a decree of the Superior Court
of Cook county, which dismissed, after an oral hearing
of witnesses on the facts, a bill in equity filed by her against
the defendant in error.

It is the second time the cause has been in this court.
The bill was first dismissed by the Superior Court for laches
shown on the face of the bill, but that decree was reversed
by this court in October, 1903, and the cause remanded.
Belinski v. National Brewing Co. et al., 109 Ill. App., 647.

The bill sets up that plaintiff in error is the owner of cer-
tain improved real property situated in Chicago; that she
purchased the same in July, 1891, and was in continuous
possession of the same until June, 1898, when she was dis-
possessed by the defendants; that she cannot speak or under-
stand English; that for several years prior to July 12, 1894,
her husband, Andrew Belinski, was engaged in the saloon
business, and dealt with the National Brewing Company;
that prior to that time her property aforesaid was encum-
bered with a trust deed for about $4,000, owned by Kasper
Building and Loan Association; that about $80 was due
on this incumbrance; that an assessment had been levied .
upon said premises for improving the adjacent streets; that
her husband, who cannot read or write English and can only
speak and understand it a little, told her that the National
Brewing Company would take up said incumbrance, pay the
assessments on said premises, and take a mortgage on said
premises to secure it for said advances; that the National
Brewing Company had, through its agents, employees and
servants, so represented to Andrew Belinski; that com-
plainant (plaintiff in error) consented to this, and relying
on the statements so made, went with Andrew Belinski, her
husband, to the office of the attorney of the defendant, the
National Brewing Company, and there executed and deliv-

ered to it an instrument represented and stated to be a mortgage for the purposes aforesaid; that she is now informed that said instrument was a warranty deed conveying her property before mentioned from herself and husband to the National Brewing Company, under date of July 12, 1894, which deed has been since recorded in Cook county, Illinois; that said deed was obtained from her by fraud and without consideration; that she was told and believed that it was a mortgage; that said real property was then fairly worth $9,000, and was encumbered for not over $4,350; that said National Brewing Company was not authorized to purchase said real estate, and the deed to it is null and void; that the officers, agents and servants of the National Brewing Company, knew, in July, 1894, that she was the owner in fee of said premises, and without her knowledge or consent, made and entered into an agreement with the said Andrew Belinski, to sell him the said premises and deprive her of her title thereto, as is shown by an agreement appended as an exhibit to the bill, which exhibit purports to be articles of agreement of the date of July 12, 1894, and recorded July 20, 1894, signed by the National Brewing Company by C. H. Plantz, president, and Andrew Belinski, by which the National Brewing Company agrees to convey to Andrew Belinski the premises in question, and Andrew Belinski agrees to pay to the National Brewing Company $7,200 on or before May 1, 1895, and interest at six per cent per annum,—in case of Belinski's failure to make payment the contract and his rights under it to be forfeited; that on July 25, 1894, said National Brewing Company filed for record an instrument purporting to be a trust deed incumbrance on said premises from the National Brewing Company to secure $4,000 and interest; that Rudolf Brand, Theodore Oehne and John A. Orb, for themselves, or as agents and officers of the said defendant, the National Brewing Company, claim to own said premises by a pretended conveyance from the National Brewing Company; that complainant has not been at any time indebted to the National Brewing Company or liable to said company for the debts of

any person; that she has not at any time been approached by any person in behalf of said company to sell said premises, and is now the owner thereof, and entitled to said premises and the possession thereof; that the only just liability against said premises was the incumbrance to the said Kasper Building and Loan Association, which she believed to be upon said premises, and upon which she had been making monthly payments to the National Brewing Company to apply on dues and interest from July 12, 1894, until she was dispossessed; that the complainant is ready to pay to the Kasper Building and Loan Association the amount due thereon as it matures, if it exists, or to pay to the National Brewing Company anything she may owe it for assessments, dues and interest on said incumbrance; that as soon as she discovered that the defendants claimed title to said premises, and that the instrument executed by her July 12, 1894, was a warranty deed, and not a mortgage, she employed counsel, and the counsel prepared and filed a bill of complaint on January 26, 1898, against the same defendants as in this bill of complaint, alleging the same facts and praying for the same relief, to which the same defendants filed joint and several answers; that the cause was referred to a master in chancery to take evidence therein, and report with his conclusions thereon; that her testimony and defendants' testimony were taken before said master, but that the master refused to file in the office of the clerk of said Circuit Court his report until all his fee was paid by her; that she paid a part of said fee and was unable to pay the remainder; that in consequence thereof her bill was dismissed February 14, 1902; that thereupon, on February 18, 1902, she refiled the same bill of complaint in the Superior Court as a poor person and that she was guilty of no laches in commencing her suit or asserting her rights therein.

The prayer of the bill is that the deed of conveyance from her and Andrew Belinski to the National Brewing Company, of the date of July 12, 1894, may be set aside, declared void as to her and delivered up to be cancelled; that the instrument between the National Brewing Company and

Andrew Belinski of the date of July 12, 1894, be set aside and declared null and void and delivered up to be cancelled; that the instrument made by the National Brewing Company to Max Froelich of the date July 25, 1894, may be set aside and declared null and void, and not a lien or cloud upon complainant's title to said premises; that she may be decreed to be the sole owner thereof; that an account may be taken of the rents and profits of the said premises received by said defendants, and that upon payment of what shall be found remaining due to said defendants, they may be decreed to surrender possession of said premises to the complainant; that defendants may be decreed to have no interest in said premises of the possession thereof, and she may have any other and further proper relief.

The National Brewing Company answered said bill, alleging that before the acts complained of in the bill, complainant held the title to the property described in the bill, for the use of her husband, Andrew Belinski, who was the equitable owner of it; that in July, 1894, Andrew Belinski was largely indebted to the National Brewing Company; that he offered on behalf of himself and the complainant, his wife, to give, and requested the National Brewing Company to take, a warranty deed to the property in satisfaction of the indebtedness owing from him to the Brewing Company, and requested the Brewing Company at the same time to give him an opportunity to buy the property, if able, by paying to the said company $7,200 on or before May 1, 1896; that the defendant, the said company, took from Andrew Belinski and wife a warranty deed to the said property, in payment of the debt due to it from said Belinski; and thereafter spent a large amount of money in paying taxes, insurance and prior incumbrance on it, and keeping it in repair and making necessary improvements. The defendant alleges that the transaction was one of bargain and sale, and denies that it or any authorized agent ever told said complainant that the deed from said complainant and Andrew Belinski was in fact a mortgage, and alleges that it was in fact not a mortgage, but a warranty deed, and that

4

both complainant and her husband knew it was a deed given in full payment and satisfaction of the debt owing from Andrew Belinski to the National Brewing Company.

The defendants allege also that the agreement it entered into with Andrew Belinski July 12, 1894, to convey to Andrew Belinski on the payment of certain sums the property in question before May 1, 1896, was made in the presence of and with the full knowledge and consent of the complainant. It admits the encumbering of the property for $4,000 by a deed to Froelich, and avers it to have been for the purpose of paying off the lien to the Kasper Building and Loan Association, and admits that it afterwards conveyed the premises to Brand, Oehne and Orb, and that at the time of said conveyance Andrew Belinski and the complainant were enjoying said premises under and by virtue of a lease from the National Brewing Company to Andrew Belinski, and that with the conveyance the National Brewing Company also assigned to Brand, Oehne and Orb its rights under the lease, and thereafter the said Andrew Belinski paid rent to said Brand, Oehne and Orb.

Brand, Oehne and Orb also answered the bill to much the same effect, either as from their own knowledge or on information and belief, and further allege that they purchased the said property from the National Brewing Company in good faith and without any knowledge that the complainant had any claim thereto or interest therein; that at the time they purchased the property Andrew Belinski was in possession of the same by virtue of a leasehold interest given him by the National Brewing Company; that before their purchase Andrew Belinski had been paying rent to the National Brewing Company, and that after it he paid rent to them, and that they recovered judgment in the Circuit Court in forcible detainer against Andrew Belinski for violation of the terms of the lease, and obtained possession of the property under and by virtue of a writ of restitution, and are now the owners and in possession thereof.

The complainant filed general replications to these answers.

The decree contains findings that by warranty deed dated as of the 12th day of July, 1894, and executed and acknowledged on the 16th day of July, 1894, the complainant sold and conveyed the property in question to the National Brewing Company for a good and valuable consideration, and that it was the intention and understanding of the parties to the transaction, that the transaction was one of purchase and sale and was not one of mortgage and loan, that the equities of the case are with the defendants, and that the complainant is not entitled to the relief prayed for, and dismisses the bill for want of equity at the complainant's costs.

The plaintiff in error (complainant below) has made various assignments of error in this court, but argues those only which resolve themselves into the proposition that the decree is against the weight of the evidence, and therefore "against the law and the evidence."

F. W. Jaros, for the plaintiff in error.

Winston, Payne & Strawn, for defendants in error; Ralph M. Shaw, of counsel.

Mr. Justice Brown delivered the opinion of the court.

There is no serious contest between the parties about the law applicable to this case.  It is, as we understand it, conceded by both parties—at all events it is the law—that an instrument which is an absolute deed on its face is presumptively a deed in fact, and that the burden of proof is on a contestant who wishes to prove it a mortgage.  Heaton v. Gaines, 198 Ill., 479; Gannon v. Moles, 209 Ill., 180.  It is also the law that it is a question of intention, to be ascertained from all the circumstances in evidence, whether a deed absolute in form is a mortgage or an absolute conveyance.  If it appears, whatever the form of the transaction, that the conveyance is but an indemnity or security, it will be held a mortgage, and it is competent in a court of equity to show by parol evidence that an instrument purporting on its face to be an absolute conveyance of real estate is

in fact a mortgage. Workman v. Greening, 115 Ill., 477; Johnson v. Prosperity L. & B. Ass'n, 94 Ill., 260.

Plaintiff in error seems to contend that because in the agreement dated July 12, 1894, between Andrew Belinski, the husband of complainant, and the National Brewing Company, substantially contemporaneous with the execution of the deed involved in this litigation, Andrew Belinski was not only given the right to repurchase, but actually made a contract of repurchase binding upon him *in personam,* the burden is shifted, and the deed made *prima facie* a mortgage. If this be the contention, it is unsound. This agreement and the other contemporaneous one for a lease for nine months, with privilege of further renewal on a fixed monthly rent, were not between the parties to this litigation, but between one of them and the husband of another —an entirely different person. It is indeed charged by the bill that it was made without the knowledge and consent of the complainant, to deprive her of her title to the premises.

The very case cited by plaintiff in error to sustain his contention—Bearss v. Ford, 108 Ill., 16—holds that a new instrument of conveyance by a mortgagor even when an agreement for repurchase by said mortgagor is incorporated therein, will, if it operates as a satisfaction or extinguishment of the original mortgage indebtedness, be regarded as a sale and conveyance of the equity of redemption with an agreement for repurchase.

It is the contention of the defendants in error here, in support of which they produced their evidence, that the mortgage indebtedness of the plaintiff in error was extinguished, and all documentary evidence adduced concerning it, as far as it goes, bears out the claim upon its face.

The mortgage trust deed purporting to be signed by the plaintiff in error and her husband to F. W. Kraft to secure the note of $2,500 to the National Brewing Company was duly released and the release recorded. A release of the trust deed to Holec to secure the loan of $5,400 from the Kasper Building and Loan Association, on which $4,000 was

due at the time of the warranty deed attached, was also re-corded.

Although the notes mentioned in these trust deeds re-spectively were not produced, the presumption from the evi-dence is that they were all cancelled.    The direct testimony of Kraft, the trustee in the $2,500 trust deed, is that he cancelled the notes secured by that instrument, and that of Wollin, the cashier and bookkeeper of the National Brewing Company, is that he turned them over to Andrew Belinski.

We think it clear that the only way that the plaintiff could have properly succeeded before the chancellor below was to assume and carry by parol evidence the burden of proof which the condition of the record title and the nature of the instruments of July 12, 1894, imposed on her; that that instrument was intended by the parties to be a mort-gage merely.    This the chancellor found she did not do. He found, on the contrary, from the evidence before him, that it was the intention and understanding of the parties to the transaction that it was one of purchase and sale and not of mortgage and loan.

In the hearing before the chancellor all the witnesses, with a single exception, were examined orally before him.    This being so, it is conceded that it is the law that it must ap-pear to an appellate tribunal that the findings of the chan-cellor on the facts are clearly and palpably against the weight of the evidence, to justify an interference with them.

It would serve no good purpose to discuss in this opinion in detail the evidence shown in the record.    We have care-fully examined it all, and all that has been said of it in the arguments of counsel, and do not find that it justifies the contention of plaintiff in error concerning it.    There is a sharp conflict on vital and material points.    If the testi-mony of Mr. and Mrs. Belinski and of witnesses produced by them stood alone, it would justify the assertion that the warranty deed in question was regarded by the parties as a mortgage.    But on the exact point in controversy, whether before Mrs. Belinski signed the warranty deed in ques-tion, the nature of the transaction was explained to her so

that she must have understood that the warranty deed was intended as an absolute conveyance, the testimony of F. W. Kraft, of Wollin, of Florus and of Zakowski, is direct and positive. They contradict Mrs. Belinski. The testimony of Andrew Belinski is contradicted in its most important parts by that of the same witnesses and that of Plantz and Oehne.

The testimony of Mr. Belinski, on which plaintiff in error places much stress, that he only went to the National Brewing Company for help after he had been to Kosminski and Greenbaum, mortgage bankers, and had been offered a loan at a rate of interest and a commission which he found too high, does not bear out the inferences claimed from it. It does not show that any definite amount which these persons would loan on the land was agreed on or even mentioned—only that the rates would be at a certain point if a loan was made. It would appear indeed that if any sum was mentioned, it was only that in which Mrs. Belinski was indebted to the Building and Loan Association. But it is very clear that such a loan could not have been made without taking care of the $2,500 incumbrance, also existing on the property, and there is evidence that these sums together even would not have relieved the distress in which the Belinskis had fallen in the pecuniary affairs, nor enabled them to hold and carry the property. It is, we think, a fair inference from all the evidence that the transaction which involved the making of the warranty deed was the last resort of the Belinskis, as they thought, to continue for a time in possession of the property and to allow Mr. Belinski to retain his business, with the hope that some favorable turn in the future would make possible its repurchase. It was to that hope probably that must be referred the payment of taxes and some repairs and whatever was paid for the filling of 21st street. At all events these expenditures do not so turn the scale as to warrant us in finding that the weight of the evidence is clearly and palpably against the findings of the chancellor.

The decree of the Superior Court is affirmed.

*Affirmed.*